## MINNIE WIMBERLY v. THE STATE.

No. 4051.  Decided February 26, 1908.

**1.—Keeping Disorderly House—Information.**

Where upon trial for keeping a disorderly house the information followed approved precedent, there was no error. Following Mitchell v. State, 34 Texas Crim. App., 311; Lamar v. State, 30 Texas Crim. App., 693.

**2.—Same—Evidence—General Reputation.**

In a prosecution for keeping a disorderly house, the fact that the house alleged to be disorderly is a disorderly house may be proved by general reputation as to the character of the house in question. Following Sylvester v. State, 42 Texas, 496; Golden v. State, 34 Texas Crim. Rep., 143.

**3.—Same—Evidence.**

Where upon trial for keeping a disorderly house, the evidence abundantly showed that defendant was keeping a disorderly house, and that she was a common prostitute, there was no error, in admitting the testimony of a witness that he had made efforts to induce defendant and her companion to abandon their life of shame, as this, even if some of the details were not admissible, could not have injured defendant.

**4.—Same—Evidence.**

Upon trial for keeping a disorderly house, there was no error in admitting testimony of indecent and vulgar language and conduct transpiring in the alleged house, some time before the alleged offense.

**5—Same—Charge of Court.**

Where the general charge covered the requested charge, there was no error in refusing the latter.

**6—Same—Charge of Court—Circumstantial Evidence.**

Where upon trial for keeping a disorderly house, the court submitted the general issue and also a charge on circumstantial evidence, although the testimony was direct and positive, the defendant could not complain.

Appeal from the County Court of Ector. Tried below before the Hon. L. M. Wilson.

Appeal from a conviction of keeping a disorderly house; penalty, a fine of $200.

The opinion states the case.
No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was convicted in the County Court of Ector County on a charge of keeping a disorderly house.

The information alleges in substance, that on or about the 2nd day of February, A. D., 1907, and anterior to the filing of the information in the county and State aforesaid, the appellant, did then and there unlawfully on the 2nd day of February, 1907, and on each day and every day from then until the 1st day of March, 1907, as owner, tenant, and lessee, keep a disorderly house, for the purpose of public prostitution and as a common resort for prostitutes and vagabonds. This complaint, under the case of Mitchell v. State, 34 Texas Crim. App., 311, and Lamar v. State, 30 Texas Crim. App., 693, is unquestionably good and sufficient.

Objection was made in various forms and presented many ways that error was committed in the admission of evidence and testimony of general reputation as to the character of the house in question. It has been held in many cases in this State that proof of general reputation is sufficient to establish the fact that the house charged to be a disorderly house is such in fact and may be proven by general reputation. See Sylvester v. State, 42 Texas, 496; Golden v. State, 34 Texas Crim. Rep., 143; Johnson v. State, 28 Texas Crim. App., 562.

It was shown that on the 8th day of February, 1907, an insurance policy on the house in question, carried in the name of appellant, was cancelled, and that the agent telephoned appellant to come to his office at the courthouse, which she did, and that he accordingly cancelled such insurance policy. The tax collector of Ector County testified that about May 10, 1907, he went to her house in Odessa, to assess her property for taxation, and that she rendered same for taxation for the year 1907. It was shown by another witness that he went to her place to survey her lot about two or three years before the trial. The tax roll was introduced by the State showing that the lot on which the house in question stands was assessed in her name, and that she paid taxes thereon, and the record of her deed was introduced in evidence by the State showing a deed to appellant to the house and lot in question. Another witness testified that about two years before the trial he built for the defendant the very house in question where she now lives, and that she had lived there ever since he built the house. It was shown by numerous witnesses that the general reputation of the house was that of a disorderly house, and that the general reputation of appellant was that she was a common prostitute.

We have rehearsed this much of the testimony with a view of passing intelligently upon the error assigned by counsel for appellant on the

admission of the testimony of one G. B. Ely. It seems that Ely was a minister of the Gospel, and testified, in substance, that a year and a half or two years prior to the 2nd day of February, 1907, he, as a minister visited appellant in her home for the purpose of trying to reform her; that he visited her at her home and found her and another woman there. That he talked with them and told them that they ought to reform and told them they could find a house of reformation. That one of them told him that she had been to a reformatory, but that she was so badly treated she had to leave. That he presented each of them with a Bible, and told them they ought to reform; that they said they had no means of making a living; that he told them if they would reform he would try to help them; that one or both of them wept, but that they made him no promise to reform. That on another occasion, after the first visit, but before the 2nd day of February, 1907, the defendant sent for him to come and pray for her, and he went and did so. In this connection, it should be stated, in view of the sacred office of this witness, that there is nothing in the record to suggest that his mission was other than in pursuance of his holy calling, and that his motives were both pure and disinterested. To the introduction of this testimony objection was made, for the reason that it related to things done and said long anterior to the 2nd day of February, 1907; that it was irrelevant and immaterial, and too remote, and while highly prejudicial to defendant, it in no manner tended to show that she kept a disorderly house at the time charged in the information. The court, in allowing this bill, does so with this qualification: "The above testimony relative to reputation of house was admitted for the purpose of proving its reputation generally while defendant had owned it." The effect of the testimony above was to prove that both appellant and her companion were leading a life of shame, and that the house was one of prostitution. In view of all the evidence, it is not believed that, while some portions of the details of the conversation were not probably admissible, the introduction of this testimony could have injured appellant. We think the general tenor of it admissible as tending to show her occupation, the manner of life she was leading, and the character of house that she was keeping.

Again, objection is made to the evidence of one Thain, that during the month of September, 1906, while at the house in question, the defendant used some very indecent and vulgar language towards him, and either she (appellant) or some woman in the house was guilty of some indecent conduct towards one Steed. We think, as tending to show the character of the house and women in it, that this testimony was admissible.

The only charge requested by appellant was one, in effect, limiting the proof of the character of the house; and that it was kept by appellant for the purpose of public prostitution to a time covered between the dates of February 2, 1907, and March 1, 1907, and in charging

the jury that she kept the house at another time than that alleged in the information and complaint, will not warrant such conviction. The court in his general charge in respect to this matter, instructed the jury as follows: "If you believe from the evidence beyond a reasonable doubt that the defendant, Minnie Wimberly, did on the 2nd day of February, 1907, and on each day from then until the 1st day of March, 1907, or on any day between said dates, keep, or be concerned in keeping a disorderly house, as above defined, and that said defendant was then and there the owner of said house, you will find the defendant guilty." This, so far as relates to the matter requested to be charged, was sufficient.

The court charged further on circumstantial evidence. It is complained the court erred in so doing. We think under the evidence that the court was not called upon or required to give a charge on circumstantial evidence. The ownership of the house by appellant was proven by uncontradicted and incontestable evidence, both direct and positive, and the other facts leading to a conclusion of her guilt were established largely by direct and positive testimony. Therefore, it was unnecessary, we think, for the court to have charged on circumstantial evidence. The fact that he did so is a matter of which appellant cannot complain. Indeed, the giving of such charge was favorable to appellant.

We have carefully gone over the entire record, and in the light of the whole case, we do not believe there was such error, if any, committed on the trial as can or does give the appellant any just cause or ground of complaint.

The judgment is affirmed.

*Affirmed.*