## LENA MOORE v. THE STATE.

### No. 3885.   Decided May 20, 1908.

**1.—Disorderly House—Continuance—Immaterial Testimony.**

Where the testimony in the application for continuance was of such negative character as to make it doubtful whether if the witnesses had appeared they could have testified to anything material for the defense, there was no error in refusing the continuance.

**2.—Same—Evidence—General Reputation.**

The authorities are uniform that proof may be made by general reputation of the character of the house kept by one who is prosecuted for keeping a disorderly house; in such case, however, the fact of defendant's connection with such house as owner or lessee must be shown by other testimony than by general reputation. Where this was done, there was no error.

**3.—Same—Charge of Court—Accomplice.**

Where upon trial for keeping a disorderly house the court properly charged the law as applicable to the facts, and the question of accomplice was not in the case, there was no error in refusing a requested charge on accomplice testimony, nor in refusing other special charges covered by the main charge.

**4.—Same—Argument of Counsel.**

See opinion for argument of State's counsel, which considered as a whole was not reversible error.

**5.—Same—Sufficiency of Evidence.**

Where upon trial for keeping a disorderly house the evidence for the State was sufficient to sustain the verdict, the same will not be disturbed.

Appeal from the County Court of Falls.   Tried below before the Hon. D. H. Boyles.

Appeal from a conviction of keeping a disorderly house.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was charged in the County Court of Falls County with keeping a disorderly house, it being alleged in substance, that the house so kept was a house for the purpose of prostitution and where prostitutes were permitted to resort and reside for the purpose of plying their vocation.   A conviction followed and the case is brought before this court on appeal.

1. The record shows that the indictment was returned on the 13th day of July, 1907.   On the 30th day of August, 1907, the appellant filed her first application for a continuance on account of the absence of Bud Rich and certain other witnesses therein named, all of whom were alleged to reside in Milam County, Texas.   The application shows that appellant was arrested on the 29th day of July, 1907, and made application for a subpœna to Milam County on the 19th day of August thereafter, which, it was averred, was executed on the 22nd day of August

by summoning all the witnesses. It is stated that appellant expected to prove that all the witnesses named were well known to her and that they had stopped many times in her boarding house—the house in question —from the 1st day of January, 1907, to the 1st day of July, 1907, and that defendant was running a rooming house and that they paid her for their lodging and there were no women of any kind except defendant and her servants about the place and that her house appeared to be quiet and orderly in every respect. We think there was no error in overruling appellant's application for a continuance for the reason that the testimony is of such a negative character as to make it doubtful whether, if the witnesses had appeared, they could be of assistance to her cause. Besides, these witnesses were non-residents of the county, the number of times or the particular times they were in Rose Bud, where the house is situated, was not shown, nor is this testimony necessarily in conflict with the proof adduced by the State. It is easily possible that the witnesses could have testified that they paid for their rooms and that when they were there, the place was orderly and that there were no women of any kind there, except appellant and her servants. This kind of testimony would not meet the issue at all and there would seem to be no good reason to have continued the case, for this character of testimony. In so far as was true, it could probably have been supplied by hundreds of witnesses living in the county.

2. During the trial proof was made by many witnesses of the general reputation of the house occupied by appellant and claimed to have been owned and controlled by her. The authorities are uniform that proof may be made by general reputation of the character of the house kept by one in a prosecution of this sort. Wimberley v. State, 53 Texas Crim. Rep., 11, 108 S. W. Rep., 384. However, in such case the fact of appellant's connection with such house as owner or lessee must be shown by other testimony than by general reputation. This is no longer an open question in this State. Proof was made and we think with sufficient clearness, that appellant was in control and management of the house. It is shown that she had the management of it and was known as the "madam" as the witnesses say, of the house; that she paid the bills and generally was in control of the management of the house. In addition to that it was shown by the tax assessor that the appellant, under the name of Mrs. Mary E. Hulbert, rendered said property as her own in 1907. Some question was made as to the regularity of this proof but as shown by the evidence there was no substantial objection to it. Barnett, the tax assessor, stated that he knew appellant; that he did not know her by the name of Lena Moore; that he knew her by the name of Mary Hulbert and recognized her original assessment shown him as being signed by her. There was no error in this. It established the fact of the ownership of the house by appellant and in the name given by her and in which it was assessed; she was all the time the same person, whether considered as Lena Moore or Mary Hulbert and the house was hers. 3. The charge of the court instructed the jury in

terms of the statute and was a fair and sufficient presentation of the case. It properly defined what was meant by a disorderly house, the punishment therefor, and instructed the jury, substantially, that if they believed from the evidence beyond a reasonable doubt that appellant did on the day and time named in the indictment, in Falls County, Texas, as the owner or tenant of a certain house, then and there situated in said county and State, keep said house for the purpose of prostitution or permit prostitutes to resort to or reside at said house for the purpose of plying their vocation they would find her guilty as charged. There were a number of special charges requested by counsel for appellant but so far as applicable they were given in the general charge of the court. There was one charge that undertook to instruct with reference to the effect to be given to the testimony of an accomplice but there was in the case no such thing as an accomplice and this charge was properly refused.

4. Complaint was made of the argument of counsel for the State to the jury. Among other things Mr. Tom B. Connally, county attorney, in closing his argument said: "Gentlemen of the Jury, I tell you it is wrong to allow prostitution in this country. Look at the defendant's jewels, they were bought with the money of prostitutes made by them in plying their vocation as such. They represent the money of girls lured by the defendant into her place. Each sparkle and glitter of those jewels mirror a tear of some broken-hearted mother whose daughter has been lured by this defendant into that house of prostitution run by her in the beautiful city of Rosebud." Again, the said counsel in his closing argument used this language: "Gentlemen of the Jury, the defense in this case is that the defendant runs a hotel. Old Nat and Bounds go to Rosebud quite often. They have to stop at some hotel. The defendant runs a hotel. They know the defendant and are her attorneys. I guess they stop at this hotel; don't you reckon they do." In so far as the remarks of the county attorney declare to the jury that it was wrong to allow prostitution in this country and that each sparkle and glitter of jewels mirror a tear of some broken-hearted mother whose daughter has been lured from the paths of virtue and right, he expressed a truth that can not be too often stated or too stoutly enforced. It was, of course, beside the question to refer to the jewels of the appellant in this case, though taken in connection with the entire speech as quoted, it is not believed that we should reverse the conviction for such a personal reference. Whether the appellant did have jewels or not, how she was arrayed, or in what jewels bedecked, we can not know; but it is not for every personal reference that a conviction should be set aside. It would only be done in a case where the evident effect of it was to prejudice the rights of the accused. The reference to appellant's counsel in connection with the claim that her place of business was a hotel, was not, we think, seriously objectionable. It was an argument by way of ridicule or sarcasm that would, we imagine, well illustrate, from the county attorney's point of view, a lack of real merit in her claim that she was running a

hotel. As we gather from the reference, it was rather an insistence by way of allusion, that these learned counsel, who knew her and represented her, would not seriously and in practice treat as a hotel what for the purpose of argument they were insisting was such. Considering the matter altogether, we do not think that the argument of the county attorney was so grave a violation of the rules of fair discussion, as to justify us in setting aside the conviction.

5. The evidence in the case is sufficient to sustain the verdict and we would be, as we conceive, wholly without just grounds to set it aside. Finding no error in the record, the judgment of the court below is affirmed.

*Affirmed.*