BERT WILSON v. THE STATE.

No. 924.    Decided March 22, 1911.

Rehearing Denied April 12, 1911.

**1.—Keeping Disorderly House—Recognizance.**

Where, upon appeal from a conviction of a misdemeanor, the recognizance failed to state the amount of punishment inflicted, the same was defective; appellant, however, filed a new recognizance in proper form.

**2.—Same—Repeal of Law—Statutes Construed—Vagrancy.**

The vagrancy Act of 1909, page 111, did not repeal article 361, Penal Code, under which defendant was prosecuted for keeping a disorderly house.

**3.—Same—Information—Description of Place.**

Where, upon trial of keeping a disorderly house, the information strictly followed the form laid down in Wilson's Criminal Procedure the same was sufficient, and it was not necessary to further describe the house or building than was stated in the information, that it was situated in the county of the prosecution.

**4.—Same—Sufficiency of the Evidence—Conflict of Testimony.**

The rule is that when a judgment is attacked because of the insufficiency of the evidence, all of the evidence that tends to show that the appellant is guilty should be given, because it is from that alone that the Appellate Court can pass on the legal question as to whether the evidence is sufficient; and

where there is sufficient evidence to sustain the conviction the same will not be disturbed.

**5.—Same—Evidence—Liquor License.**

Where one of the counts in the information charged the defendant with keeping a disorderly house, for selling and keeping for sale spirituous, vinous and malt liquors without license, there was no error to permit the county clerk to testify that he had issued no liquor dealer's license to the defendant, without bringing his books; the clerk testifying positively to the facts and having the stubs of the receipts which he issued with him on the witness stand.

**6.—Same—Evidence—General Reputation.**

Upon trial for unlawfully keeping a disorderly house by being concerned in the sale of spirituous, vinous and malt liquors without license, and also for the purposes of prostitution, there was no error in admitting testimony as to the general reputation of the building or house as to being a place where spirituous, vinous and malt liquors were sold or kept for sale and that the inmates of the house had the general reputation of being prostitutes. Following Joliff v. State, 53 Texas Crim. Rep., 61, and other cases. Davidson, Presiding Judge, dissenting.

**7.—Same—Charge of Court—Requested Charge.**

Where, upon trial for keeping a disorderly house, the court sufficiently charged the law of the case and the evidence sustained the conviction, there was no error in refusing certain requested charges that the evidence was insufficient.

**8.—Same—Circumstantial Evidence—Charge of Court.**

Where, upon trial for keeping a disorderly house, the evidence was direct which connected the defendant with the alleged offense, there was no error in not submitting a charge on circumstantial evidence.

**9.—Same—Evidence—Bill of Exceptions—Conversation.**

Where, upon trial for keeping a disorderly house, one of the inmates testified that she received the company of men in her room of the alleged house for immoral purposes, etc., there was no error. Neither was there error with reference to a certain conversation between third parties, as the bill of exceptions did not state what the conversation was.

**10.—Same—Bill of Exceptions—Practice on Appeal.**

Where appellant's motion for a new trial complained that he was deprived of certain testimony of his codefendant who was then under conviction and serving a sentence for the same offense with which appellant is charged, but the matter was not presented by bill of exceptions nor was it shown that a motion for continuance was made to await the time when said codefendant would be qualified to testify, there was no reversible error.

Appeal from the County Court of Potter. Tried below before the Hon. W. M. Jeter.

Appeal from a conviction of keeping a disorderly house; penalty, a fine of $200 and twenty days confinement in the county jail on three counts of the information, for each count.

The opinion states the case.

*Reeder & Graham,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—This is a misdemeanor case. The appellant was prosecuted on seven different counts and convicted on three, numbered 2, 4 and 6. By No. 2 he was charged with keeping and

being concerned in keeping and aiding, abetting, etc., in keeping, and knowingly permitting to be kept as owner, tenant and lessee, a house, etc., in Potter County, for the purpose of prostitution, and where prostitutes were permitted to resort and reside for the purpose of plying their vocations, on April 5, 1910. And No. 4 charges substantially the same thing on April 6, 1910. No. 6 charges substantially the same thing on April 7, 1910. His punishment was assessed on each of the several counts, Nos. 2, 4 and 6, at a fine of $200 and twenty days in jail.

The Assistant Attorney-General makes a motion to dismiss this appeal, among others, on the ground that the recognizance does not state the amount of punishment inflicted. This ground of the motion is well taken. See authorities cited in Kid Moffett v. State, this day decided.

The motion is granted and the appeal dismissed.

*Dismissed.*

## ON REHEARING.

### April 12, 1911.

PRENDERGAST, JUDGE.—On April 25, 1910, the appellant was proceeded against under article 361 of the Penal Code, as enacted in 1907, page 247, by complaint and information. There were six counts in the complaint and information. The first and second counts are as follows:

"On or about the 5th day of April, 1910, and before the making and filing of the information, in the county of Potter and State of Texas, Bert Wilson did then and there unlawfully keep and was concerned in keeping, and did aid, abet and assist in keeping, and did knowingly permit to be kept a disorderly house in a certain house, building, edifice and tenement then and there situated in this: that he, the said Bert Wilson, did then and there unlawfully keep and knowingly permit to be kept and was concerned in keeping, and did aid, abet and assist in keeping said certain house, building, edifice and tenement, there situated, in which spirituous, vinous and malt liquors were then and there sold and kept for sale, without a license first having been obtained under the laws of the State of Texas, to retail and sell such liquors, and in which the said Bert Wilson then and there unlawfully sold and kept for sale, and was concerned in selling, and did aid, abet and assist in selling spirituous, vinous and malt liquors without having first obtained a license under the laws of the State of Texas to retail such liquors, and the said Bert Wilson did not then and there have a license under the laws of the State of Texas to sell such liquors, and that such liquors were then and there so sold and kept for sale in a house, building, edifice and tenement, then and there owned, leased, occupied and controlled by him the said Bert Wilson, against the peace and dignity of the State. And the said R. E. Underwood, in behalf of said State, does further present in connection

with the complaint herewith filed, at the April term of said court, that at the time and place aforesaid, on to wit, the 5th day of April, 1910, Bert Wilson was then and there the owner, tenant and lessee of a certain house, building, edifice and tenement then and there situated, and as such owner, tenant and lessee of said house, building, edifice and tenement did then and there keep and was concerned in keeping, and did aid, abet and assist in keeping, and did knowingly permit to be kept said house, building, edifice and tenement as a house for the purpose of prostitution, and where prostitutes were then and there permitted to resort and reside for the purpose of plying their vocation, and such house was then and there so kept as a bawdy house and as a disorderly house."

The other four counts were substantially, if not exactly, like these two, except that they charged the offense to have been committed on April 6 and 7, 1910, respectively. The appellant was convicted under counts 2, 4 and 6 only, and the penalty assessed against him was a fine of $200 and twenty days imprisonment in the county jail under each of these counts.

1. The appellant attacks the conviction, among other things, on the ground that the Vagrancy Act of 1909, page 111, repealed said article 361 under which this prosecution was held. It is our opinion that the Vagrancy Act did not repeal this article of the Penal Code. We will not again here discuss this matter, as it is fully discussed in the cases of Austin v. State, and Parshall v. State, recently decided by this court, but not yet reported.

2. Appellant claims that the information is insufficient, and that his motion to quash it on the following grounds ought to have been sustained: that these several counts were wholly insufficient in failing to describe or identify the house or place which it is alleged was conducted as a disorderly or bawdy house, not even the town or city, street, lot or block being alleged by or from which defendant can know where the building alleged to have been a disorderly or bawdy house is situated. The information followed strictly the form laid down in Willson's Criminal Procedure. It was unnecessary to further identify the house or building other than was stated in the information, that it was in said Potter County. Lowe v. State, 4 Texas Crim. App., 34; Sprague v. State, 44 S. W. Rep., 837; Stokeley v. State, 37 Texas Crim. Rep., 638; Schulze v. State, 56 S. W. Rep., 918.

3. The appellant vigorously insists that the verdict of the jury was contrary to the evidence and not supported by it, claiming that the evidence shows that the appellant had nothing to do with keeping the second story of the building in any way, but that another run and operated that exclusively. To sustain his contention in this respect, he does not give any of the testimony introduced against him on that subject, but refers only to the testimony offered by him in his defense. The rule is that when a judgment is attacked because of the insufficiency of the evidence, all of the evidence that tends to show the ap-

pellant guilty should be given, because it is from that alone that this court can pass on the legal question raised. It will not do to show that the testimony was amply sufficient to have justified his acquittal. The law makes the jury and lower court the exclusive judges of the credibility of the witnesses, and the weight to be given to their testimony, and this court has no power or authority to state that the jury and lower court should have believed the appellant's testimony and not believe that of the State against him.

We will not undertake to give the testimony in full to show the guilt of the appellant. Much of it tends strongly to do so. It was clearly shown that J. D. Lyons was the owner of the building which the appellant was charged with keeping, etc. That this owner, some time before the commission of the offense, rented the whole of the building to other parties. The lower story of the building was fitted out for running a restaurant, the upper story a rooming-house, furnished with beds and necessary furniture for that purpose. That the appellant bought out the tenants to whom the property was originally rented the latter part of February, 1910. That Savage, the party from whom appellant had so bought, continuously thereafter and up to the trial of this case paid the rent on the lower story, though appellant operated the restaurant therein. That appellant continuously paid the rent on the rooming-house from the time he bought out the previous tenant up to April 15, 1910, and he told Lyons, the landlord, that he had bought out the prior tenant and was to pay the rents therefor, and the landlord accepted him as the tenant for the second story, and received the rent from him therefor. The testimony further shows that the people downstairs (in the restaurant part) served meals upstairs, and the people upstairs seemed to be connected with the management downstairs. Sandifer, whom appellant claimed he had sold out to and who appellant claims was running the upstairs, told one of the witnesses that he was working for appellant, and this witness had seen Sandifer downstairs working, and that he had stated to this witness that he was working there, and this witness testified that he thought it was all run as one from what he saw and knew of it. The testimony further shows that the cattlemen's convention was held in Amarillo, where this house was situated, on April 5, 6 and 7, 1910, and the great preponderance of the evidence shows—in fact, it is practically undisputed, both by positive testimony, different acts and circumstances, and the general reputation of both the restaurant part and the rooming part of the house—that they were run and operated, especially during these three days, as a disorderly house and as a bawdy house. There were several prostitutes in the house, the rooming part, during all of these three days and nights, plying their vocation, as shown by both positive and circumstantial evidence. Many drunken men were shown to be in the second story, the rooming part, during all this time, visiting and seeing these prostitutes; that some trouble arose there, and an officer was summoned for the purpose of quieting

it, and did so. The testimony further shows that the appellant was seen upstairs several times during this time; that he carried meals up there to at least one of these women. That one day while he was up there in the hall he asked one of the inmates how business was, and she told him it was fairly good. Beer was drunk in several of these rooms during this time, and many empty beer bottles were seen there by the various witnesses. Many of the men, visitors to the women up there, bought beer during this time; some of it was sold by the appellant. The appellant's cook was up there and sold beer one of these nights. There was a beer room in the second story in one of the rear rooms where beer was kept on ice and sold therefrom. Another one of the witnesses testified that he knew the appellant was running the restaurant downstairs, and supposed he was also running the upstairs. Numerous witnesses testified that the general reputation of the house, both the restaurant and the upstairs, was bad, and that the reputation of both the upstairs and downstairs was that of a place where liquors were sold, and where prostitutes were permitted to resort and reside for the purpose of plying their vocation during this particular three days, April 5th, 6th and 7th.

So that we conclude that the record shows ample evidence, both positive, circumstantial and by reputation, that the appellant was guilty, or rather that the jury were fully authorized to so find.

4. Appellant claims that the court erred in permitting the county clerk to testify that he had issued no liquor dealer's license to appellant of any kind, nor any transfer of any other license to him for that purpose, and that his records showed no such issuance nor transfer. The effect of the objection to this testimony was that it was inadmissible in that the testimony showed that the defendant was not guilty of keeping or selling liquor there during that time, and the other objection is that his books were the best evidence, and his testifying what they did not show was inadmissible. The bill shows that the clerk testified positively to the facts, and that he had with him on the witness-stand the stubs of the receipts issued, or of transfers, which were his only records on that subject, and that he looked through them while so testifying on the witness-stand, and that they showed no issuance or license or transfer to the appellant. There was no error in the admission of this testimony on any of the grounds claimed by appellant.

5. There are many bills, and the point is saved otherwise to the objection of the testimony of the various witnesses as to the general reputation of both the restaurant and the rooming-house as to its being a place where spirituous, vinous and malt liquors were sold or kept for sale, and that the inmates of the house, the said women prostitutes, had the general reputation of being prostitutes. The objection to the testimony of the several witnesses as to the general reputation was because the witnesses did not show that they knew the general reputation, in that while the city of Amarillo had a population of

about ten thousand people, they had heard a comparatively small number speak of the reputation of the house and the inmates thereof on the points inquired about. The extent of the information of the witnesses, and the number of persons who had so talked about the house and inmates, was more to the weight of the testimony before the jury than as to its admissibility. The testimony of general reputation on both points was clearly admissible, as has been long established and many times decided by this court. Joliff v. State, 53 Texas Crim. Rep., 61; Golden v. State, 34 Texas Crim. Rep., 143; Forbes v. State, 35 Texas Crim. Rep., 24; Sprague v. State, 44 S. W. Rep., 837; Harkey v. State, 33 Texas Crim. Rep., 100; Burton v. State, 16 Texas Crim. App., 156; Allen v. State, 15 Texas Crim. App., 320; Wimberly v. State, 53 Texas Crim. Rep., 11; Moore v. State, 53 Texas Crim. Rep., 559.

6. The appellant asked several special charges, one of which was given, several of which were refused, and he also complains of several paragraphs of the court's charge. The charge of the court was full and correct. The complaints of appellant thereto are not because of any special error in the charge itself, if applicable to the case, but the complaint is that it was inapplicable on the appellant's theory of the case that the testimony showed conclusively that he was not guilty as claimed by his attack on the sufficiency of the evidence to convict. What we have said about the evidence shows clearly that none of these charges were improperly refused, and that the charge of the court on the grounds attacked was clearly right, and that there was no error in any of these matters complained of.

7. Another one of appellant's complaints is, that the court did not give a charge on circumstantial evidence, and erred in refusing his charge on that subject. What we have said about what the testimony shows answers this and makes it clear that, because the testimony directly connects appellant with the offense committed, a charge on circumstantial evidence was not called for, and would have been improper.

8. Appellant's sixth bill of exception complains that the court erred in permitting the witness Margaret Reed to testify that she had a room in the rooming-house over the said cafe during the cattlemen's convention; that she received company—men—in said room, and that said Sandifer brought part of her company to said room and knocked on her door, and she testified as to conversations and negotiations between herself and said Sandifer and other persons, the other evidence showing that appellant was not present on any of these occasions. This testimony was objected to because the testimony shows that appellant had nothing to do with the said rooming-house where said conversations and transactions took place, and it was not shown that the defendant knew of or was chargeable with the matters testified to, and that as to him they were hearsay. This bill does not state what the conversations were between this witness and Sandifer. So that we can not pass upon whether or not the conversations, if any, were hearsay.

The other part of the testimony of this witness as to her staying in this house during these three days, and that she received company and plied her vocation there during this time, and that Sandifer brought part of her company to her room, and knocked on her door, was perfectly legitimate testimony against the appellant as amply shown by all of the testimony in this record.

9. The last ground of appellant's motion for new trial complains that he was deprived of the testimony of said Sandifer because Sandifer was then under conviction and serving out his sentence for the same offense with which the appellant is here now charged. The effect of this ground of the motion, which is very lengthy and accompanied by the affidavit of said Sandifer, is that whenever he gets competent to testify, that his testimony will show that the appellant was not guilty, etc. This matter was not presented by bill of exception, neither is it shown that a motion for continuance was made to await the time when Sandifer would serve out his sentence and could testify, nor was it shown that he was tendered or offered as a witness in the case. Even if his testimony could have been admitted, the way this matter is presented, it does not show any error was committed by the lower court because of the refusal of the court to grant a new trial.

We have deemed it unnecessary to take up separately each of appellant's many assignments of error, but we have taken up the material ones, and have considered in detail, in the examination of the case, all of them. Those we have taken up and decided are the material ones, and show sufficiently that there was no error committed by any of the others not taken up specifically by us.

There being no error in the record, the judgment is affirmed.

*Affirmed.*

Davidson, Presiding Judge, dissenting; may write later.

[A sufficient recognizance was filed after dismissal of appeal. Rehearing denied April 12, 1911.—Reporter.]