Annetta Dimitri v. The State.

No. 2355.     Decided April 2, 1913.

**1.—Keeping Disorderly House—Sufficiency of the Evidence.**

Where, upon trial of keeping a disorderly house for purposes of prostitution, the evidence sustained the conviction, there was no error.

**2.—Same—Evidence—Circumstances.**

Upon trial of keeping a disorderly house for the purposes of prostitution, there was no error in admitting testimony that the officer had arrested twelve women at the alleged house and that he knew they were prostitutes and that they pleaded guilty. Following Robbins v. State, 60 Texas Crim. Rep., 523, and other cases.

**3.—Same—Charge of Court—Good Faith—Knowledge.**

Where, upon trial of keeping a disorderly house, the evidence showed that defendant knew the character of the house to be one used for the purposes of prostitution, there was no error in the court's refusal to submit the question of good faith in renting the rooms thereof.

Appeal from the County Court of Dallas County at Law. Tried below before the Hon. W. F. Whitehurst.

Appeal from a conviction of keeping a disorderly house for the pur-

poses of prostitution; penalty, a fine of $200 and twenty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

C. E. Lane, Assistant Attorney-General, for the State.—On question of reputation of house: Johnson v. State, 32 Texas Crim. Rep., 504; Harkey v. State, 33 id., 100; Forbes v. State, 35 id., 24; Wimberly v. State, 53 id., 11.

PRENDERGAST, Judge.—Appellant was indicted for keeping and being concerned in keeping, on July 15, 1912, a house of prostitution, and where prostitutes were permitted to resort and reside for the purpose of plying their vocation. She was found guilty and her penalty assessed at a fine of $200 and twenty days confinement in jail.

The evidence sufficiently and without contradiction shows that she was in control and kept such house in Dallas. Several witnesses testified that the general reputation of the house as a house for that purpose was bad. It seems that this reputation not only existed on the date charged but for some time prior thereto. Her clerk testified that she employed him and he worked for her at said house; that when employed she instructed him that when a man and a woman came there and wanted a room, to rent it to them and get the money; to let them sign the book as man and wife, and that he carried out these instructions, rented the rooms to any couple that came for that purpose; that he did not ask them whether they were married or not; that men would come there and want girls, and when they did he called appellant and she would arrange for the girls. One police officer testified that he was up in the house at one time and saw a man and woman in bed together; that they said they were not married; that the woman told him she got $2 for going to bed with the man, and the man said he gave her $2 for that purpose. Another witness testified that between April 1, 1912, and July 15, 1912, he took a woman up in that house. "I took her up there for the same purpose that other fellows took them up there. I accomplished my purpose. I registered as man and wife." Another peace officer testified that in May, 1912, while appellant was in charge of the house, he arrested twelve prostitutes there and that they all plead guilty. That he had seen two of these prostitutes down in the reservation.

Appellant had several bills of exception to nearly all of this testimony on various grounds. The bills are very lengthy. It is unnecessary to copy any of them. As a sample of them we state the first. After the style of the case, court, etc., and the usual recitation of "be it remembered," this bill states that while the State's witness Linthicum was testifying, he was asked these questions: "Q. What is your name and business? A. I am a police officer and have been nearly two years.

Q. Annette Dimitri here is charged with running a disorderly house, on or about the 15th day of July, 1912. State what you saw, if anything, around that house? A. I made several arrests there. The Court: Go ahead. Q. Well, go ahead and tell it. A. Well, in May I arrested twelve prostitutes in the house. The Court: What did you say?. A. I said in the month of May I arrested twelve prostitutes in the house and they all plead guilty." Then follows about two typewritten pages of objections. All of this testimony was clearly admissible as has many times been held by this court and none of appellant's objections thereto were good. Robbins v. State, 60 Texas Crim. Rep., 523; Finn v. State, 60 Texas Crim. Rep., 521; Wilson v. State, 61 Texas Crim. Rep., 628; Stone v. State, 22 Texas Crim. App., 185; Sylvester v. State, 42 Texas, 496; Allen v. State, 15 Texas Crim. App., 320; Cook v. State, 22 Texas Crim. App., 511; Golden v. State, 34 Texas Crim. Rep., 143; Joliff v. State, 53 Texas Crim. Rep., 61; Moore v. State, 53 Texas Crim. Rep., 559; Tachini v. State, 59 Texas Crim. Rep., 55; Sprague v. State, 44 S. W. Rep., 837; Wimberly v. State, 53 Texas Crim. Rep., 11.

The evidence did not call for and the court did not err in not submitting appellant's special charges to the effect that if appellant in good faith rented rooms to persons who represented themselves as husband and wife and she believed at the time said representations so made by said persons; and that if she in good faith rented rooms to parties who represented themselves as husband and wife and when said representations were made they were true, to acquit appellant.

The uncontradicted evidence clearly shows appellant's guilt and the court properly submitted the question to the jury for a finding, no jury acting in accordance with the evidence and the charge of the court could have found otherwise than that appellant was guilty.

The judgment will be affirmed.

*Affirmed.*