## II. W. FERGUSON v. THE STATE.

No. 4072. Decided June 7, 1916.

Rehearing denied June 23, 1916.

1.—Forgery—Indictment—Evidence—Variance.

Where the indictment alleged forgery and passing of the forged instrument, and only the count for forgery was submitted, there was no error in permitting proof of the forgery of the instrument copied in the indictment; there being no variance, and the indictment being sufficient.

2.—Same—Evidence—Bill of Exceptions.

Where the bills of exception to the admission of testimony were insufficient to require this court to consider them, the same presented no reversible error, even if said bills were considered.

3.—Same—Evidence—Credits—Notes and Other Transactions—Books.

Where defendant was convicted of forgery of a certain note, there was no error in admitting in evidence the credits and payments and other transactions with reference to said note and that the books of the bank did not show any cash payment. Following Wilson v. State, 61 Texas Crim. Rep., 628, and other cases.

4.—Same—Evidence—Alibi—Dates.

Where defendant claimed an alibi upon trial of the forgery of a certain note, there was no error on cross-examination by the State in permitting it to exhibit

to the witness some notes and documents of different dates from that of the alleged note and asking the witness questions about his recollection of the dates of these several documents; not offering them in evidence, however.

### 5.—Same—Evidence—Other Transactions.

Where defendant objected to the cross-examination about a certain note which had no connection with the case, and the court sustained his objection, there was no error.

### 6.—Same—Motion for New Trial—Bills of Exception—Practice on Appeal.

This court never considers bills of exception which are merely made to the overruling of the motion for new trial, the same being on many grounds and none of them stated in the bills.

### 7.—Same—Requested Charges—Practice on Appeal.

Where the requested charges were merely copied in the record, and nothing in them or in connection with them showed at what time they were presented to the judge or acted upon by him, or any reason why they should have been given, and no bill of exceptions reserved to the court's refusal to give either of them, the same can not be reviewed on appeal. Following Byrd v. State, 69 Texas Crim. Rep., 35, and other cases.

### 8.—Same—Charge of Court—Objections—Amendment.

Where, upon trial of forgery, the court submitted his charge to defendant's attorneys for examination who made several objections thereto, and the court made corrections to conform his charge to said objections and resubmitted same to the attorneys who made no further objections thereto, there was no reversible error. However, when considered, no error is presented.

### 9.—Same—Charge of Court—Principals—Definitions—Words and Phrases.

Where, upon trial of forgery, the court gave a proper charge on the law of principals as applicable to the facts and a definition of the offense, there was no reversible error, although it would have been better to have omitted the word "possibly" when submitting the question of injury and fraud; yet no injury having resulted, there was no reversible error. Following Lucas v. State, 39 Texas Crim. Rep., 48.

### 10.—Same—Indictment—Proof—No Variance—Principal and Agent.

Where, upon trial of forgery, the indictment alleged that defendant unlawfully, etc., did make a certain false instrument, etc., the same was sufficient to admit proof that defendant caused the note to be written, where it alleged forged instrument. Following Dillard v. State, 177 S. W. Rep., 99, and other cases.

### 11.—Same—Indictment—Principals—Rule Stated.

It is elementary that the act which makes the defendant a principal need not be alleged in the indictment; a principal offender may be charged directly with the commission of the offense, although it may not have actually been committed by him. Williams v. State, 42 Texas, 392, and other cases.

### 12.—Same—Sufficiency of the Evidence.

Where, upon trial of forgery, the evidence was sufficient to sustain the conviction under a proper charge of the court, there was no reversible error.

Appeal from the District Court of Cherokee. Tried below before the Hon. L. D. Guin.

Appeal from a conviction of forgery; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Perkins, Perkins & Perkins, W. B. Wynne, Guin, Guin & Imboden,* and *E. C. Gaines,* for appellant.—On question of admitting in evidence other transactions: McCandless v. State, 42 Texas Crim. Rep., 58; Hinson v. State, 51 id., 102; Gardner v. State, 55 id., 400; Curtis v. State, 52 id., 606; Monroe v. State, 56 id., 444; Herndon v. State, 50 id., 552.

Upon question of causing instrument to be made: Johnson v. State, 40 Texas Crim. Rep., 605.

Upon question of charge of court: Lucas v. State, 39 Texas Crim. Rep., 49; Johnson v. State, 40 id., 605.

Upon question of irrelevant testimony: Hayney v. State, 57 Texas Crim. Rep., 158.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of forgery and his punishment assessed at four years in the penitentiary.

The indictment is in two counts. The first, with proper allegations, avers that appellant forged the name of G. W. Earle to a note for $145. The second that he passed that forged note. The court submitted both counts to the jury for a finding. The jury found him guilty of forgery only.

The court did not err in overruling appellant's motion to quash the indictment (bill No. 1), nor in permitting proof of the forgery of the note copied in the indictment (bill No. 2), because it was claimed there was a variance between the name of Earle, whose name was forged. The record shows no variance whatever.

Appellant has some bills of exception to the admission of testimony. They are very meager. The State urges that under the long and well established rules they are wholly insufficient to require or authorize this court to consider them. While we think the State's contention is true, yet we will consider all of them in the light of the whole record.

This prosecution and conviction was had under articles 924 and 932, Penal Code, in connection with our statute on principals. Our statute on principals applies to all offenses. And so far as forgery or passing a forged instrument is concerned, they are exactly the same as if they were specifically embraced in and a part of our forgery statute.

Article 924 is: "He is guilty of forgery who, without lawful authority, and with intent to injure or defraud, shall make a false instrument in writing, purporting to be the act of another, in such manner that the false instrument so made would (if the same were true) have created, increased, diminished, discharged or defeated any pecuniary obligation, or would have transferred, or in any manner have affected any property whatever."

Article 932 is: "He is guilty of *making,* under article 924, who, knowing the illegal purpose intended, *shall* write, or *cause to be written,* the signature, or the whole or any part of a forged instrument. All persons engaged in the illegal act are deemed guilty of forgery."

The uncontradicted testimony clearly shows that appellant for some time before January 1, 1914, until some time in July, 1915, was the active vice president of the Guaranty State Bank at Mt. Selman, Texas, and as such he handled the bank's business almost exclusively. On January 28, 1914, G. W. Earle borrowed from said bank through appellant $125, and at the time executed to said bank his note for $145, due October 1, 1914. On October 31, 1914, Earle carried to appellant a bale of cotton to sell and apply the proceeds on said note. He turned the bale of cotton over to appellant for that purpose and took his receipt therefor. Appellant at the time advised Earle not to sell the cotton that day but to hold it for a while in order to get a better price, appellant at the time agreeing to sell it for Earle and apply the proceeds as a credit on said note. This was agreed to between them. Later appellant did sell the cotton, and after taking out what he claimed was an attorney's fee due by Earle on said note, there remained $21.08 net to be credited on that note. On December 28, 1914, Earle paid to appellant $15 cash, to be credited on said note and got a receipt from appellant therefor. Earle was unable to make further payments on said note. On April 27, 1915, he saw appellant, and at the time it was agreed between them that Earle should make a new note to the bank for the difference between said note and the remainder after allowing said $15 credit and the credit for the proceeds of said cotton. Appellant had sold said cotton at the time but then claimed to Earle that he had placed said $145 note in the hands of an attorney for suit and collection, and that he did not then know what the attorney's fees and court costs would be, but the two then estimated that the new note, after allowing these credits, would amount to $90 or $100. Thereupon, it was agreed between them that Earle should then sign a blank note to be filled out by appellant with the correct balance after deducting said two credits as soon as he could get the $145 note back and ascertain the attorney's fees and costs and then send the said $145 note to Earle. Thereupon, Earle did sign a note in blank payable to said bank, dated April 27, 1915, due October first, following. Some time later, but the date not disclosed with certainty, appellant filled out said blank note, making it for $130, without deducting at all the proceeds of said cotton, and he himself kept that note as well as the $145 note in his possession. He never at any time sent to Earle said $145 note, and did not turn over to the bank either of said payments of $15 or $21.08, the proceeds of said cotton.

On or about April 19, 1915, appellant, without any authority of Earle, had Mr. Burns, who was then cashier of said bank, to make out and sign Earle's name to a new note to the bank for $145, bearing said date, due October 1, 1915, and had that note placed in the bank as a genuine note. At the time he had this done he claimed to Burns that he had the authority from Earle to do this. Burns believed from what appellant then told him that he had this authority and had no notice that appellant had no such authority. About December 10,

1915, Earle, who lived some considerable distance from Mt. Selman, went to see appellant there to have a complete settlement with him or the bank. He had considerable trouble and delay in getting appellant to a settlement. While thus seeking a settlement that day, Mr. Rankin, who was then a bookkeeper in the bank, met appellant on the street, and appellant told him that Earle was there to pay some on his note and told him not to show Earle said $145 note dated April 19th. Dr. Gee was at that time president of the bank. Later in the evening Earle succeeded in getting appellant into the bank to procure a settlement. When he did, appellant told Dr. Gee that said $145 note, dated April 19, 1915, was a bogus note—that it was made for the purpose of getting by the bank examiner. While Earle was then seeking a settlement and appellant was delaying it, Earle went to the bank and called on the president for a settlement. The president presented to him the said $145 April 19th note. Earle, upon looking at it, immediately denounced it as a forgery. That was the only note against him then in the possession of the bank. When Earle did get appellant into the bank, he, appellant, Dr. Gee and Rankin were the only persons therein. When Dr. Gee showed him the April 19th note, he examined it and in appellant's presence again denounced it as a forgery. Appellant then touched Dr. Gee, and they went in the back end of the bank and had a private conference. Dr. Gee then returned to Earle, and then for the first time presented to him said $130 note, when Earle told him that that was his genuine signature to that note. Dr. Gee swore that on this occasion appellant told him that said $145 note of April 19th was a bogus note. That it had been fixed up to pass the bank examiner. That "we" fixed it up to pass the bank examiner. That on this occasion appellant had in his hands and produced said $130 note and also produced the genuine $145 note, dated January 28, 1914. Earle refused to have anything to do with said April 19, 1915, $145 note.

The testimony further shows that at the time appellant had Burns to write out and sign Earle's name to said $145 note, dated April 19, 1915, appellant was actually present in the bank, and was either actually present right at, and saw Burns when he did this at his instance, or was, at least, in the bank near him when Burns did this. Burns swore: That after the discovery by Earle of said forged note appellant had a conversation with him with reference to Earle's signature to the forged note, and the frame up was, appellant wanted him to testify that they met Earle in the road one day, and Earle then authorized them, or him, to sign his name to the note That Burns was to swear that he and appellant met Earle in the road one day and he gave Burns authority to sign said last $145 note. Further: "I never met Earle in the road, though, and he never gave me authority to sign his name to said note. The reason that he (appellant) told me for me swearing that we met Earle and he gave me authority to sign his name to the note was to get authority to sign his name to it.

I didn't have any such authority at the time I signed the note, but Mr. Ferguson said Earle told him to renew the note." Earle was a negro.

The testimony establishing the facts as above recited were disputed by no other testimony. Appellant did not testify. His defense was alibi, and he contended that the claimed forged note was not executed for the purpose of defrauding anyone; in other words, that the making of said alleged forged note was without the intent to injure or defraud. His wife, his clerk, Mr. Cole, and others testified that he was not in Mt. Selman on the day said alleged forged note was dated, nor until at least a day later; that he went to Dallas a day or two before that date and remained out of Mt. Selman for two or three days.

We will now take up each of appellant's other bills. In one (No. 3) he objected when the State asked said Earle this question: "Now, I will ask you about this credit of $21.08 on this note, bale of cotton $21.08. Did you actually deliver this cotton to Mr. Ferguson?" His objection to this was that "it was an inquiry about a transaction happening long after the execution of the note that defendant was being prosecuted for and about a separate and distinct note of $130, payable by Earle to said bank, and was irrelevant, immaterial and incompetent." The bill in no way shows what the answer of the witness was, and for that reason alone would show no error, but even if he did tell that he actually delivered the cotton to appellant, it would have been admissible.

In another bill (No. 4) he objected to this testimony of the witness Rankin: "As to what the Guaranty State Bank of Mt. Selman received on the 10th and 11th of December, 1915, on account of these Earle notes, there doesn't seem to be anything shown on the books. We received the $130 note from Mr. Ferguson on that date—the bank did. The books don't show that the bank received $21.08 on account of G. W. Earle on either the $130 note or the $145 note. This book I have here and have examined is the teller's cash. It is the office of this book to show the daily transactions of the bank." His objections to this testimony are mere objections alone and are not certified by the judge as facts or true. The objections were that the books were not kept correctly and the State had failed to show that the witness was acquainted with the books, and without this proof the excerpts from them were inadmissible and that it was an inquiry about a credit on a $130 note and was immaterial and irrelevant. The bill does not show that the witness testified to any entries in the book. He simply testified that the books showed no entry of a credit of $21.08. Anyone would have been competent to so testify if he had examined the books for that purpose It is not like testifying of entries in the books, but was to show what was not in them. (Strong v. State, 18 Texas Crim. App., 24; Wilson v. State, 61 Texas Crim. Rep., 628.) All the testimony about said notes and payments thereon was admissible and material. The State had the right to show all about them

After appellant's clerk and witness Cole had testified so positively that appellant was not at Mt. Selman on the date said alleged forged note bore and the details of why he claimed he remembered the date so accurately, the State on cross-examination for the purpose of testing his accuracy as to dates exhibited to him some notes and written documents of different dates, which, it seems, he had witnessed, and then asked him several questions about his recollection of the dates these several documents, etc., were executed. The State did not offer any of them in evidence but used them merely to exhibit to the witness and cross him, as stated. The bill (No. 5) shows no error in the court's action in permitting this character of cross-examination over his objections that it was a separate and distinct transaction and had no connection with the Earle note under inquiry, etc.

In another bill (No. 6) it is shown the State continued in this cross-examination of Mr. Cole for said purpose, and asked him about a certain R. R. Warren note. When appellant objected to this the court sustained his objection, as shown by the bill. This bill shows no error.

The only other bill is merely to the overruling by the court of his motion for a new trial. We never consider such bills when, as in this case, the motion for a new trial is on many grounds, none of them stated in the bill.

Appellant requested several special charges. They merely appear copied in the record. Nothing in them or in connection with them shows at what time they were presented to the judge nor acted upon by him, nor any reason why they should have been given. He in no way took a bill to the court's refusal to give either of them. Under such circumstances, it has been the uniform holding of this court in a great many cases that such matters can not be reviewed by this court. It is unnecessary to collate these cases, but see Ross v. State, 75 Texas Crim. Rep., 59, 170 S. W. Rep., 305, and a large number of cases since then following that decision; also Ryan v. State, 64 Texas Crim. Rep., 628; Byrd v. State, 69 Texas Crim. Rep., 35, and a large number of cases since then following these decisions.

When the court's charge as originally prepared was delivered to appellant's attorney for examination, they at the time made several objections thereto. It is certain from an inspection of the charge that after these objections were made, the court made corrections to conform to some of said objections at least. We must assume, as there is nothing in the record to indicate to the contrary, that the court complied with the statute, and after making these changes resubmitted his charge to his attorneys, and nothing shows that they made any further objection thereto or took any bill of exceptions whatever to the failure or the refusal of the .court to further correct or modify his charge. Under the circumstances it is doubtful if we are called upon to pass upon any of said objections, but we have considered them all.

As to his first, clearly the court changed his charge to comply there-

with, for what he there objected to is not in the charge as shown by the record.

There was no error in the court giving the general definition of who was a principal to quote the statute to the effect that any person who advises or agrees to the commission of an offense and who is present when the same is committed is a principal thereto, whether he aids or not in the illegal act. The facts of this case called for that specific charge, and it is applicable herein. Nor did the court err in quoting substantially in his general definitions article 77, one of the articles of our statute on principals, omitting therefrom that part with reference to poison or preparing means whereby a person may injure himself, etc. Nor did the court err in one sentence of his general definitions, telling the jury, "all persons engaged in the illegal act are deemed guilty of forgery," for that is a specific portion of the statute of forgery (art. 932, P. C.) under which this prosecution and conviction were had and was entirely applicable to the testimony.

Surely appellant has no ground to complain of that paragraph wherein the court told the jury that when a person making an instrument in writing acts under an authority which he has good reason to believe, and actually does believe, to be sufficient, he is not guilty of forgery, though the authority be in effect insufficient and void. Such is not only a true proposition of law, but was called for by the testimony. Even if the testimony did not call for it, it was in his favor and would benefit, not injure him.

The sixteenth paragraph as to passing a forged instrument was also correct and applicable herein, but whether it was or not, as appellant was not convicted of passing the instrument, such charge even if error became immeterial. For the same reason, his objections to the twenty-second paragraph pass out. The twenty-first paragraph, to which he objects, on the subject of principals is clearly and distinctly the law and fully applicable to this case.

The only other objection appellant made to the charge was in the use of the word "possibly" in the twenty-fourth paragraph, the whole of said paragraph being: "You are charged that in the trial for forgery it need not be proved that the party committing such forgery, if any, did so with intent to injure or defraud any particular person or corporation; or that any particular person or corporation was injured or defrauded by the forgery, if any there was; but it is sufficient if it appears that *possibly* someone might be injured or defrauded thereby." Probably it would have been better for the court to have omitted this word, but clearly taking the charge as a whole, which must always be done, and the undisputed facts of this case, no injury could have occurred to appellant by reason thereof, as has been expressly held by this court in Lucas v. State, 39 Texas Crim. Rep., 48.

Appellant's contention now made that he was indicted for one offense and convicted of another is untenable. The indictment alleged that he unlawfully, without authority and with intent to injure and

defraud, did wilfully and fraudulently *make* a certain false instrument, etc. The indictment follows the very language of the statute (arts. 924 and 932) above quoted, and the proof follows and establishes the offense as alleged. The statute is: he is guilty of forgery who shall *make* a false instrument, etc., and he is guilty of such *making* who shall write, or cause to be written, the signature, or the whole, or any part of the forged instrument. It was wholly unnecessary for the indictment to allege that appellant *caused* to be written the signature or the forged note. The allegation made was all that was necessary. Under the allegation and the law proof that he caused it to be written and the signature thereto, was embraced in the allegation as made. Besides, "what a man does by his agent he does by himself." Smith v. State, 21 Texas Crim. App., 107; Strang v. State, 32 Texas Crim. Rep., 219; Welsh v. State, 3 Texas Crim. App., 413. And especially is this true when the agent he used was an innocent one, though it would make no difference so far as appellant was concerned whether he was a guilty or an innocent agent. If a guilty one, then both would be principals. (Dillard v. State, 177 S. W. Rep., 99.)

It is elementary that "The acts which make the defendant a principal need not be alleged in the indictment. A principal offender may be charged directly with the commission of the offense although it may not have actually been committed by him. Cruit v. State, 41 Texas, 476; Williams v. State, 42 Texas, 392; Bell v. State, 1 Texas Crim. App., 598; Davis v. State, 3 Texas Crim. App., 91; Tuller v. State, 8 Texas Crim. App., 501; Mills v. State, 13 Texas Crim. App., 487; Farris v. State, 26 Texas Crim. App., 105, 9 S. W. Rep., 487; Watson v. State, 28 Texas Crim. App., 34, 12 S. W. Rep., 404; Finney v. State, 29 Texas Crim. App., 184, 15 S. W. Rep., 175; Gallagher v. State, 34 Texas Crim. Rep., 306, 30 S. W. Rep., 557; Campbell v. State, 63 Texas Crim. Rep., 595, 141 S. W. Rep., 232; Oliver v. State, 144 S. W. Rep., 604; Madrid et al. v. State, 71 Texas Crim. Rep., 420, 161 S. W. Rep., 93; Dillard v. State, 77 Texas Crim. Rep., 1, 177 S. W. Rep., 99." (1 Branch's Ann. P. C., sec. 676.) Arensman v. State, 79 Texas Crim. Rep., 546, 187 S. W. Rep., 471, recently decided but not yet reported.

The oral arguments and the several briefs filed by appellant's attorneys have taken a somewhat wide range in the discussion of this case, but we are not called upon to discuss all these questions discussed by appellant's attorneys. We have carefully considered all the testimony. The jury disbelieved appellant's witnesses wherein they attempted to prove an alibi for him. That unquestionably was for the jury, not this court. The evidence by the State was amply sufficient to disprove his alibi. There can be no question from this record that the evidence was amply sufficient to clearly establish appellant's guilt.

The judgment will be affirmed.

*Affirmed.*

[Rehearing denied June 23, 1916.—Reporter.]