John Price **HAYTER**, Jr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 51875.

Court of Criminal Appeals of Texas.

Oct. 6, 1976.

James O. Terrell, Waco, for appellant.

Martin D. Eichelberger, Dist. Atty., Lynn Malone, Asst. Dist. Atty., Waco, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

This is an appeal from a conviction for burglary; the punishment, enhanced by two prior convictions, is imprisonment for life. V.T.C.A. Penal Code, Sec. 12.42(d).

The erroneous admission of harmful hearsay evidence which was offered to rebut the testimony of the appellant requires the reversal of the judgment.

It was alleged that the appellant entered a habitation and committed the felony offense of kidnapping by using and threatening the use of deadly force. The State offered the testimony of the complainant, which was corroborated by the testimony of her grandmother, and her eight year old son, and by other evidence. While her husband, who was in the military service, was

being transferred from his station in Germany to Fort Benning, Georgia, the complainant, the mother of three young children, was living with her grandmother.

At about 12:30 p. m. the complainant saw the appellant enter the yard in front of the house where she lived. He came to the door and said he was "from the electric company." He told her that a power failure was being experienced in the area, and he inquired if she had had any power failure or difficulty with her appliances. She told him that her television set was not working, but she didn't know if it was because of that power failure. The appellant, after gaining entrance to the house to inspect her appliances, threatened to harm the complainant and her eleven month old baby. He then forced the complainant to take him from the premises in her automobile. The police, alerted by the complainant's grandmother, stopped the automobile and arrested the appellant.

The appellant's version of the matter was entirely different. He said that he had recently been placed on parole and was employed by Mosley Machine Company. Just after noon, as the appellant was crossing the parking lot, he saw the complainant sitting in an automobile eating a sandwich. She was dressed in shorts; she was barefooted "with her legs hanging out" of the car. The appellant had heard that a woman had been visiting the parking lot and there picking up men. Although he had not seen her before, he thought this was the woman about whom he had heard. As he passed her automobile, she spoke first asking him if he was off duty. On the spur of the moment, he told her that he was off duty; she suggested that they go some place together. She did not tell him where they were going but after he was in the automobile she told the appellant she would first have to go to her house to get her shoes. They left the parking lot, and after driving in a roundabout route, the complainant drove to her house. She went in the house and then she came back to the door and motioned for the appellant to come into the house. While the appellant

was drinking a bottle of soda water offered him by the complainant, an older woman whom he had seen on the bed woke up. The appellant heard the older woman tell the complainant, "Well, I don't want him in here. You just take him away and get him away from here . . ." The complainant then told the appellant that her mother was "shook up" and that they would have to leave. The appellant and the complainant left in her automobile, and the appellant was arrested by police after they stopped the automobile driven by the complainant.

The evidence complained of is the testimony of Officer Joe R. Johnson. During his investigation of this offense, Johnson went to the machine company where the appellant had been employed to "check out" the story related to him by the appellant. He said the appellant told him many people at the machine company had seen a woman on the parking lot almost daily, and that several of these people told him they had "relations" with her. Johnson said he talked to fourteen employees of the machine company. At this time the appellant's counsel objected to the offer of any hearsay testimony. Johnson was then asked, "Based upon those conversations that you had with those employees, did anyone ever indicate to you that—." Appellant's counsel then objected that the question called for hearsay. After a short colloquy between counsel and the court the objection was sustained. Then the following transpired:

"BY PROSECUTOR:

"Q. Mr. Johnson, based upon your investigation and conversations with all of these people at Mosley [Machine Company], have you found anything to indicate that there was ever a woman on that parking lot?

"A. No sir.

"[DEFENSE ATTORNEY]: Your Honor, I object to that. That calls for an improper—a conclusion on the part of this witness.

"THE COURT: I'll overrule that objection.

"[DEFENSE ATTORNEY]: Can I object to it again, because it calls for an answer based on hearsay.

"THE COURT: Overruled.

"A. No, sir, I did not find any of the employees that had seen Mrs. _____ [complainant] or her car on the parking lot, at anytime.

"Q. Did Mr. Eschenburg, this man's supervisor, also attempt to do the same thing?

"A. Yes, sir.

"[DEFENSE ATTORNEY]: Your Honor, I object to that. That is clearly hearsay, as to what Mr. Eschenburg—

"THE COURT: I'm sorry. I didn't catch the question. I'm sorry. What was the question.

"[PROSECUTOR]: I asked if Mr. Eschenburg, his supervisor, had also attempted to do the same thing.

"THE COURT: Well, I'll sustain the objection to that question."

The State argues that Johnson's testimony was not hearsay, that the prosecutor's question merely called for the witness' conclusion based on the negative results of his investigation of the appellant's version of the matter. It is argued that the witness did not recite conversations he had with the appellant's co-workers. The State says: "In essence, the witness' testimony was merely that he had tried to find any of appellant's co-workers who might have seen the victim and that he could not do so. This was clearly within personal knowledge of the witness and did not call for hearsay."

The State then draws an analogy between this case and those holding that a witness who has examined books or other documents may testify that the books or documents do not contain certain information. Among the authorities cited are *Rice v. State*, 130 Tex.Cr.R. 342, 93 S.W.2d 1149 (1936); *Long v. State*, 120 Tex.Cr.R. 373, 48 S.W.2d 632 (1931); *Moore v. State*, 87 Tex. Cr.R. 77, 219 S.W. 1097 (1920); *Ferguson v. State*, 79 Tex.Cr.R. 641, 187 S.W. 476 (1916) and *Wilson v. State*, 61 Tex.Cr.R. 628, 136 S.W. 447 (1911).

The authorities cited by the State are concerned with the business records exception to the hearsay rule. See Article 3737e, V.A.C.S.

Although A may testify that he has examined business records and that the records do not contain certain entries, B's testimony based on information he received from A that no such entries are contained in the records is not firsthand information; it is clearly hearsay and would not be admissible. Although the State might have introduced testimony of any or all fourteen employees that they had observed the parking lot at relevant times and they had not seen the complainant on the parking lot, Johnson's testimony based on information he received from the fourteen employees that the complainant had not been on the parking lot was not firsthand information; it is clearly hearsay and it was not admissible. See McCormick and Ray, Texas Evidence, Secs. 781, et seq. (2d ed.).

Johnson's testimony was offered to rebut the appellant's testimony; it seriously impinged on an important part of the appellant's defensive testimony; it was harmful; it was erroneously admitted; its admission constituted reversible error.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.