EDDIE REESEMAN v. THE STATE.

No. 575.    Decided May 25, 1910.

**1.—Forgery—Indictment—Corporation—Stock Company—Partnership.**

Upon trial of forgery, where the instrument alleged in the indictment imports on its face a pecuniary obligation, and where the person injured is the alleged drawee of such instrument, it is not necessary, in aid of such instrument, to allege that the person on whom it is drawn is a corporation, partnership or joint stock company. Following Lucas v. State, 39 Texas Crim. Rep., 48, and other cases.

**2.—Same—Indictment—Funds in Bank.**

Where, upon trial of forgery, the alleged forged instrument imported on its face an obligation, there was no necessity of explanatory averment that the person whose name was forged had funds in bank, and that the payor or payee could have been injured.

**3.—Same—Indictment—Name of Person Alleged to be Forged.**

Where, upon trial of forgery, the indictment set out in haec verba the

instrument alleged to have been forged, with explanatory averments as to the name of the person whose act the alleged instrument purports to be, the same was sufficient. Following Rhudy v. State, 42 Texas Crim. Rep., 225; 58 S. W. Rep., 1007.

**4.—Same—Argument of Counsel—Allusion to Defendant's Failure to Testify.**

Where, upon trial of forgery, the State counsel's argument was a challenge or reference to the fact that defendant had not produced testimony of persons readily accessible by whom he might have proved that he could not write, the same was not an allusion to defendant's failure to testify.

**5.—Same—Charge of Court—Circumstantial Evidence.**

Where, upon trial of forgery, the evidence was circumstantial, and the court charged the jury that to warrant a conviction each fact necessary to establish the guilt of the accused must be proved by competent evidence beyond a reasonable doubt, and the facts and circumstances proved should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis or conclusion than that of his guilt, and producing in their minds a reasonable and moral certainty that the accused committed the offense, there was no error. Following Moseley v. State, 127 S. W. Rep., 178.

**6.—Same—Comparison of Handwriting—Pleading—Evidence.**

Where, upon trial of forgery, no evidence of handwriting was made, there was no error in not permitting the defendant to read an affidavit, which he had filed with his· plea of not guilty, that he had not executed the alleged forged instrument.

**7.—Same—Argument of Counsel.**

Where, upon trial of forgery, the evidence showed that the defendant had possession of the check alleged to have been forged, and there was some evidence that defendant went under another party's name, there was no error in the State counsel's argument that no one else had any interest in said check except the defendant who had possession thereof.

**8.—Same—Charge of Court—Weight of Evidence.**

Where, upon trial of forgery, the charge of the court, taken as a whole, did not contain any assumption of any fact, but submitted the issuable facts to the jury to be found by them from the evidence, the same was not on the weight of evidence.

**9.—Same—Sufficiency of the Evidence.**

Where, upon trial of forgery, the evidence sustained the conviction, the same will not be disturbed.

Appeal from the District Court of Bowie. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Hart, Mahaffey & Thomas,* for appellant.—On question of insufficiency of indictment: Belden v. State, 50 Texas Crim. Rep., 565, 99 S. W. Rep., 563; Anderson v. State, 20 Texas Crim. App., 595; Barnes v. Com., 41 S. W. Rep., 772, and cases cited in opinion.

On question of insufficiency of the evidence: Spicer v. State, 52 Texas Crim. Rep., 177; 105 S. W. Rep., 813; Batte v. State, 57 Texas Crim. Rep., 125, 122 S. W. Rep., 561.

On question of argument of counsel: Jenkins v. State, 49 Texas

Crim. Rep., 457, 93 S. W. Rep., 726; Bearden v. State, 46 Texas Crim. Rep., 144, 79 S. W. Rep., 37.

On question of court's charge on circumstantial evidence: Williamson v. State, 30 Texas Crim. App., 330, and cases cited in the opinion.

On question of alluding to defendant's failure to testify: Shaw v. State, 57 Texas Crim. Rep., 474, 123 S. W. Rep., 691.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—On the 2d day of December, 1908, the grand jury of Bowie County returned into the District Court of said county an indictment containing two counts against appellant, one charging him with forgery, and the other with attempting to pass as true a forged instrument. The last count was by the court on motion quashed, and the conviction was had on the first count, which is as follows: "That Eddie Reeseman, late of the county of Bowie, on the 2d day of November, in the year of our Lord one thousand nine hundred and eight with force and arms, in the county of Bowie and State of Texas, did then and there unlawfully and wilfully and fraudulently and without lawful authority, and with intent to injure, make a certain false instrument in writing purporting to be the act of another, which said instrument is to the tenor following: 'Texarkana, Texas, Nov. 2, 1908. No. —. The City National Bank. Pay to S. M. Scott $15.00, fifteen dollars, 00 Dollars. Dr. G. A. Jamisom.' That by the name Dr. G. A. Jamisom, which the said Eddie Reeseman then and there signed to and placed upon the aforesaid instrument in writing, the said Eddie Reeseman then and there meant G. U. Jamison, whose name the said Eddie Reeseman then and there without lawful authority and with intent to injure and defraud, intended to sign to said instrument and wrote Dr. G. A. Jamisom thereon instead," his punishment being assessed at confinement in the penitentiary for a period of two years.

The facts in the case show that at and before the date of the alleged forgery one G. U. Jamison, a negro, resided in Texarkana, and that he was a physician, and that he had his office over what is called the Stevens drugstore, and was the only person at said drugstore of that name, and was the only colored physician in Texarkana. It appears further from the testimony of Dr. Jamison that there was a S. M. Scott residing in Texarkana, but that he had never had any business with him except to pay him some dues for his wife accruing to the church to which they belonged. He also testified he did not sign the check in question nor authorize anyone else to sign his name to same; that he had not executed said check, and that same was executed without any authority whatever from him. He particularly denied that he had given same to appel-

lant; that he did not know how appellant came into possession of same, and that he had never done any work for him. It appears further from the testimony that about November 2, 1908, appellant brought the check in question into the City National Bank of Texarkana and presented same for payment. It appears the cashier took the check in his hand and began to examine it, and that appellant was thereupon asked who gave him the check, to which he replied that Dr. Jamison had given it to him; that he was thereupon asked if it was the colored Dr. Jamison, who had an office over Stevens' drugstore, to which he replied that it was, and that he had been at work for Dr. Jamison, and that Dr. Jamison had given him the check to pay him for his work. That thereupon Mr. Sain, one of the witnesses, remarked to Mr. Phenix, the cashier, in the presence of appellant, that Dr. Jamison's initials were G. U., and not G. A., and that the signature of the check was not Dr. Jamison's. That Mr. Hughes, who was city marshal, was present at the time and took appellant into custody, and said he would go around to Dr. Jamison's office and investigate the matter, and that appellant left in charge of the city marshal. Mr. Hughes, who was introduced as a witness, confirmed most of this testimony, and particularly the fact that appellant said at the time his name was Scott. He also testified that when he and appellant reached the building where Dr. Jamison had his office and started upstairs, that appellant ran from him, going up the steps very fast, jumping three or four steps at a time, ran down the hallway, down the back stairs into a lot, and jumped over a six-foot fence and got away from him; that he pursued him, however, and called to Mr. Anderson, a deputy constable, to arrest him, who did catch him and brought him back to the witness. That appellant's name was not Scott at the time he tried to pass the check and represented himself to be Scott. In addition to the production of the check, this was practically the State's case. Appellant introduced no testimony. The case was presented on oral argument on behalf of appellant, and is also supported by a brief on his behalf, which is very ingenious, but, we think, rather more plausible than sound. The motion for new trial, as well as the brief, raises a great number of questions, most of which we will consider.

1. Among other things, it is contended here, as it was contended in the court below, that the indictment was insufficient in that it did not allege whether the City National Bank of Texarkana was a corporation, joint stock company or partnership, and in support of this contention we are referred to a number of cases. The more important of these and the ones claimed to be more directly in point are the cases of Nasets v. State, 32 S. W. Rep., 698; Lynch v. State, 41 Texas Crim. Rep., 209, and White v. State, 24 Texas Crim. App., 231. These cases do not, we think, support the propo-

sition. The case of Nasets v. State, supra, was a case in which an attempt was made to swindle the First National Bank of Goliad by obtaining money upon a draft presented to it. There the charge was for obtaining money of the bank, and the First National Bank of Goliad was the party swindled. The crime consisted of obtaining the money of the bank under a false pretense; it was the person injured. The crime was quite analogous to that of theft. Indeed, swindling is everywhere regarded as a form of theft, and that decision but followed the ordinary rule that where property is stolen the name of the owner must be alleged, and if a corporation, that fact must be stated. The case of Lynch v. State, supra, while a forgery case, was a case in which an existing receipt theretofore executed by the Mineral Wells Cotton Yard had been altered, and the offense in that case was one primarily against the Mineral Wells Cotton Yard, in that its existing obligation had been altered, and the act, if genuine, would have been the act of the Mineral Wells Cotton Yard. Here the forgery was of the signature of Lynch and the offense primarily against him, and it was his check that was forged. The other case, White v. State, supra, was a case of theft proper of property belonging to a corporation, and is not, we think, in point, nor does it in principle sustain the contention here.

2. Again, it is contended that the indictment was insufficient in that it contains no allegation that Jamison had funds in said bank at the time of said alleged forgery, or that the bank had in its possession on deposit any money belonging to said Jamison, the purported maker of said check, or that said Jamison or said bank, or either of them, could have been injured in any manner. In support of this contention we are referred to the case of Belden v. State, 50 Texas Crim. Rep., 565, 99 S. W. Rep., 563. Not only do we think it apparent that this case does not support appellant's contention, but it seems to us evident that the rule there stated is directly opposed to such contention. The instrument there considered was held not on its face to import an obligation, and, therefore, it was required to be shown by explanatory averments that Smith, the injured party, had a running account in the bank, and that the bank was instructed to pay this account to the party therein named. The following quotation states the rule: Referring to the Cagle case, 39 Texas Crim. Rep., 109, the court say: "It was said that this was not that character of commercial instrument which imported an obligation on its face, and, while it might be the subject of forgery, the relation of the parties as landlord and tenant, etc., should have been set out by explanatory averments." Referring again to the case of Black v. State, 42 Texas Crim. Rep., 585, the court say: "The doctrine announced in that case was to the effect that where an instrument does not clearly import a pecuniary obligation, but requires extrinsic proof in order to show it to be a legal obligation, the extrinsic averment must be made." We think the true

rule is where, as in this case, the instrument on its face imports a pecuniary obligation, and where the person injured is the maker of such instrument, it is not necessary, in aid of such instrument, to allege whether the person on which it is drawn is a corporation, partnership or joint stock company. Lucas v. State, 39 Texas Cr. Rep., 48; Webb v. State, 39 Texas Cr. Rep., 534. That this instrument, if genuine, imported an unconditional obligation, is apparent; that Jamison could have been held by any person to whom this instrument was duly endorsed, for the amount of the check, is beyond question, and this, too, without reference to whether the bank was a corporation, partnership or a joint stock company, and whether in fact there was such a bank.

3. Again, it is complained that the indictment is insufficient in that it does not set out the name of the person whose act the alleged instrument purports to be. We think an examination of the instrument will clearly demonstrate the insubstantial character of this contention. The indictment does not, as some of the forms provide, in terms state after the words: "purported to be the act of another," to wit: G. U. Jamison, but it does set out in heac verba the instrument forged, and then contains the averment that by the name of G. A. Jamisom was meant G. U. Jamison, "whose name the said Eddie Reeseman then and there without lawful authority and with intent to injure and defraud, intended to sign to said instrument and wrote Dr. G. A. Jamisom thereon instead." In view of the fact that Dr. Jamison's initials were not accurately signed to the instrument, it seems to us that the form of indictment here complained of is rather to be commended than condemned. Rhudy v. State, 42 Texas Crim. Rep., 225, 58 S. W. Rep., 1007.

4. Again, complaint was made of the argument of the district attorney to the following effect: "If the defendant can not write, why is it that he did not put his mother upon the stand, who is here and who was sworn as a witness and placed under the rule with the other witnesses in this case, to show that he could not write, and why is it that he did not place his school teacher upon the stand and prove by said teacher that he could not write?" This line of argument was excepted to on the ground that it was a reference by the district attorney to appellant's failure to testify in his own behalf or to introduce any evidence on the trial in his own behalf, and because there was no evidence offered before the jury as to whether or not the mother of appellant was present, and whether or not she had been placed under the rule as a witness, and there was no evidence before the jury as to whether the school teacher was present to whom appellant had gone to school, and that the remark was outside of the record of the cause and prejudicial to him. This bill is approved by the court with the following explanation: "The mother of the defendant was present and was sworn and placed under the rule and was present during the whole trial.

This was in answer to the argument of defendant's attorney to the effect that the State had failed to prove that the defendant could write. The district attorney denied that he was referring to the failure of the defendant to testify; said he did not even think of such a thing." It is clear to us that this is in no sense a reference to appellant's failure to testify. It is a challenge and a reference to the fact that he had not produced testimony of persons readily accessible by whom he might have made proof that he could not write. From the court's explanation it is apparent that appellant's counsel had been making the argument that there was no proof offered by the State that he could write. It has often been held that it is competent for counsel for the State to refer to the fact that a defendant had failed to produce in his behalf the testimony of his wife. The statement of the court is to the effect that appellant's mother was present as a witness, was sworn on the trial, and placed under the rule. Many things occur in the presence of the jury that do not appear in the written record before us; references to the manner of witnesses, their hesitation, and a thousand things which may affect their credibility are the subject of comment as matters happening in the presence of the jury which can not appear in the printed record. We do not think that there was any error in the action of the court in declining to instruct the jury to disregard this argument. On the contrary, we think it was legitimate and proper.

5. Again, complaint is made of the charge of the court on the subject of circumstantial evidence. This charge is as follows:

"In this case the State relies for a conviction upon circumstantial evidence, alone, and in order to warrant a conviction upon such evidence each fact necessary to establish the guilt of the accused must be proved by competent evidence beyond a reasonable doubt, and the facts and circumstances proved should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis or conclusion than that of his guilt, and producing in your minds a reasonable and moral certainty that the accused committed the offense."

It is averred that this charge is insufficient in that it fails to charge the jury that each fact necessary to a conclusion is to be proven by competent evidence beyond a reasonable doubt; second, that it fails to charge the jury that all the facts necessary to a conclusion must be consistent with each other and with the main fact sought to be proved; third, that it fails to instruct the jury in positive terms that the circumstances taken together must be of a conclusive nature leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the accused is guilty; and, fourth, that it does not tell the jury that the facts must be consistent with each other and with the main fact sought to be proved, and that the circumstances must

exclude every reasonable hypothesis except that of the defendant's guilt. We think these criticisms are without substantial merit. It is well settled that there is no prescribed formula for a charge on circumstantial evidence. Loggins v. State, 8 Texas Crim. App., 434, and that if the ideas conveyed are correct and so expressed as to be understood by the. jury, the charge is sufficient. Chitister v. State, 33 Texas Crim. Rep., 635. The cases cited by appellant do not, as we believe, support his contention. The charge condemned in the case of Williamson v. State, 30 Texas Crim. App., 330, was as follows: "In this case the State relies upon circumstantial evidence, and to justify a conviction upon such evidence alone the facts relied upon must be absolutely incompatible with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of guilt." Judge White, speaking for the court, says: "As to the law of circumstantial evidence, the charge of the court, while abstractly correct as far as it went, did not lay down the rule by which the jury must be governed in weighing each fact or circumstance, and then grouping them together as a whole, determining whether they were consistent with each other as well as with the defendant's guilt, and leading to a moral certainty that the defendant, and no one else, committed the offense. In other words, the charge, as given, upon circumstantial evidence, furnishes no aid to the jury in determining what weight should be given to this character of testimony, and upon what hypothesis they would be authorized to convict in view of the evidence, and was therefore erroneous in not stating the law fully upon this subject." In the case of Jones v. State, 34 Texas Crim. Rep., 490, the charge of the court there considered was held to be erroneous in that it failed to instruct the jury that the evidence must be of so conclusive a nature as to exclude every reasonable hypothesis except the defendant's guilt. And in the later case of Smith v. State, 35 Texas Crim. Rep., 618, the judgment was reversed on practically the same ground. Now, an inspection of the charge here complained of will demonstrate that the jury are therein charged that before the conviction would be authorized "the facts and circumstances proved should not only be consistent with any other reasonable hypothesis or conclusion than that of his guilt, and producing in your minds a reasonable and moral certainty that the accused committed the offense." While this charge does not follow the most frequently approved form, we think, in substance, it is sufficient, and not subject to the complaint levelled against it. Moseley v. State, 127 S. W. Rep., 178.

6. Again, this question is presented. Before the trial appellant filed in writing a statement sworn to by appellant to the effect that he did not execute or sign the check alleged in the bill of indictment to have been forged, and under his oath denied the execution of said check. When called on to plead and after entering his plea of not guilty, he offered to read this sworn plea to the jury, which

was objected to by the district attorney, and which objection was by the court sustained, and the court refused to permit appellant to read same before the jury. We assume that this affidavit was filed on the assumption or belief that on the trial the State would offer as part of the incriminatory evidence proof of handwriting in support of the conviction. Article 794 of the Code of Criminal Procedure is as follows: "It is competent in every case to give evidence of handwriting by comparison made by experts or by the jury; but proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature under oath." As a matter of fact, however, no proof or evidence of handwriting was made, and if it could be said that the court was in error in refusing to permit this sworn plea to be filed, it is clear that in view of the fact that no evidence was offered to which it could apply, or in respect to which it could furnish any support for the application of the rule above provided, the failure of the court to permit it to be read could in no sense be held to be injurious.

7. Again, complaint is made of the following language used by counsel for the State: "Where is the proof in this case that anyone had any interest in this transaction except the man who had the instrument in his possession?" This was objected to on the ground that it was a reference by the district attorney to the defendant's failure to testify in his own behalf in the cause. We do not think that by any sort of fair implication could this be said to be a reference to appellant's failure to testify. It should be remembered in this case that he, appellant, had possession of the check; that he represented his name to be Scott; that he had stated that the check was given to him by Dr. Jamison, the negro physician, and that he had worked for Jamison. There was some evidence, however, that there resided in Texarkana a man named S. M. Scott, but Jamison's testimony shows that he had given no such check to Scott, and it could, therefore, to meet the proof that there existed a man named S. M. Scott, be a fair argument that the evidence nowhere showed that this man Scott or anyone else had any interest in the check except appellant.

8. Again, complaint is made of the following portion of the court's charge:

"Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant, Eddie Reeseman, on or about the 2d day of November, 1908, in the county of Bowie and State of Texas, did unlawfully, wilfully and fraudulently make the said instrument in writing, which was read to you in evidence and which is copied in this charge above, and that he signed the name Dr. G. A. Jamisom to said instrument, and that when he did so he intended and believed that he was signing the name of G. U. Jamison to the same, and that he did this without lawful authority from G. U. Jamison and with the intention to injure or defraud, then you will find the

defendant guilty of forgery, as charged, and assess his punishment at confinement in the penitentiary for not less than two nor more than seven years.

"The offense of forgery may be prosecuted in any county where the written instrument was forged, or where it was attempted to be used is passed."

This charge is complained of because, as urged, it is on the weight of evidence, and it contains an assumption that appellant had signed the name of Jamison to said instrument, and that when he did so he intended and believed that he was signing the name of G. U. Jamison. We think this objection is without merit, and that the charge of the court taken altogether does not contain an assumption of any fact, but submits the issuable facts to the jury to be found by them from the evidence.

9. Finally, it is urged that the verdict of the jury is contrary to the law and the testimony. We have set out the evidence in the statement of the case. This testimony, if believed, was ample in our opinion to support the judgment of conviction.

Finding no error in the record, it is ordered that the judgment be and the same is hereby in all things affirmed.

*Affirmed.*