## MAY, 1915.

### J. J. DILLARD v. THE STATE.

No. 3513.   Decided April 21, 1915.

Rehearing granted May 19, 1915.

**1.—Passing Forged Instrument—Basis of Forgery—Affidavit.**

Where, upon trial of passing a forged instrument, the instrument set out in the indictment was an affidavit showing, if true, that the grantor in a quit claim deed was the identical person named therein, etc., and was such memorandum in writing which, if true, would have affected the title of the grantor by estopping him from bringing suit for the land described therein, the same was such an instrument in writing as would afford the basis for forgery and passing a forged instrument.  Davidson, Judge, dissenting.

**2.—Same—Explanatory Averments—Indictment.**

Where the alleged instrument upon which the forgery was based was self-explanatory, it was not necessary to set out explanatory averments in the indictment.

**3.—Same—Rule Stated—Explanatory Averments.**

If the instrument on its face is such that it imports an obligation in regard to the property and will afford the basis of a civil action without resorting to extrinsic testimony, no extraneous averments are necessary.  Following Reeseman v. State, 59 Texas Crim. Rep., 430.

**4.—Same—Indictment—Agent—Surplusage.**

Where the indictment alleged that the defendant by and through his agent passed the alleged forged instrument, and did not allege that said agent was an innocent party to the transaction, but the alleged words about the agent were surplusage and unnecessary, and the indictment was valid without them, there was no error.  Following Rawls v. State, 48 Texas Crim. Rep., 622, and other cases.  Davidson, Judge, dissenting.

**5.—Same—Rule Stated—Principals—Pleading.**

It is the rule that it is not necessary to allege the facts relied upon to show the person on trial to be a principal, although the offense may not have been committed by him.  If he is a principal by reason of the part performed by him in the commission of the offense, he may be convicted under an indictment charging him directly with the actual commission.  Following Williams v. State, 42 Texas, 392, and other cases.

**6.—Same—Charge of Court—Principal — Accomplice — Conspiracy—Innocent Agent.**

Where, upon trial of passing a forged instrument, the defendant objected to the court's charge because it did not require the jury to find that the party named in the indictment through whom the passing of said instrument

Vol. 77 Crim.-1

occurred was the innocent agent of the defendant so as to make the defendant a principal in the crime, but the evidence showed that said party and the defendant together acted as principals in the crime, each one performing different parts thereof and that a conspiracy existed to which defendant and said party were parties, there was no reversible error. Davidson, Judge, dissenting.

### 7.—Same—Principals—Rule Stated—Common Law—Statute.

If part of a crime be committed in one place and part in another, each person concerned in the commission of either part is liable as a principal, and where several combine to forge a document and each executes by himself a distinct part of the forgery and they are not together when the instrument is completed, they are, nevertheless, all guilty as principals. This is the common law rule as well as the statutory rule. Following Smith v. State, 21 Texas Crim. App., 107, and other cases. Davidson, Judge, dissenting.

### 8.—Same—Sufficiency of the Evidence.

Where, upon trial of passing a forged instrument, the evidence was sufficient to sustain the conviction, there was no reversible error on that ground. Davidson, Judge, dissenting.

### 9.—Same—Language Used in Opinion.

See opinion for explanation as to language used by the court inadvertently in the original opinion.

### 10.—Same—Indictment—Statutes Construed—Title to Land.

Where the indictment alleged forgery and passing a forged instrument as defined by articles 947 and 949, Penal Code, defining forgery as affecting title to lands and including any character of instrument which would affect the title to land, the same was sufficient. Davidson, Judge, dissenting.

### 11.—Same—Charge of Court—Punishment.

Where, upon trial of forgery under articles 947 and 949, Penal Code, the trial court erroneously submitted the punishment under another statute, and the punishment assessed by the jury was not within the minimum and maximum terms of the statute on which the prosecution was based, the judgment must be reversed and the cause remanded.

### 12.—Same—Principals—Article 743, Code Criminal Procedure.

Where, upon trial of passing a forged instrument, the evidence did not conclusively show that the party upon whom it was alleged to have been passed was a principal in the commission of the offense, the contention that the conviction could not be sustained because said party was a principal in the crime is untenable; besides, that issue was not raised in the trial court, and under article 743, Code Criminal Procedure, there was no reversible error. Davidson, Judge, dissenting.

### 13.—Same—New Indictment.

See opinion for suggestion by the court to the prosecuting attorney that a new indictment be found, so as to cover the case as made by the evidence.

Appeal from the District Court of Hale. Tried below before the Hon. R. C. Joiner.

Appeal from a conviction of passing a forged instrument; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

J. F. *Cunningham* and *Ferguson & Pucket,* for appellant.—On question of insufficiency of instrument for subject of forgery:   Wombel v.

State, 44 S. W. Rep., 827; Cagle v. State, 44 S. W. Rep., 1097; Huckaby v. State, 78 S. W. Rep., 942.

On question of explanatory allegations: Colter v. State, 40 Texas Crim. Rep., 165; Black v. State, 42 id., 585; Pelton v. State, 60 Texas Crim. Rep., 412, 132 S. W. Rep., 480.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of the offense of passing a forged instrument, and his punishment assessed at two years confinement in the State penitentiary.

The facts in this case would show that appellant traded some property in Oklahoma to R. H. Thompson, and in exchange therefor Thompson gave him a deed to some property in Oklahoma City; also a quit claim deed to 640 acres of land in Swisher County, Texas, described in the record as section No. 3 in block No. B-6, certificate No. 48. Mr. Thompson testified that he "would not say that he owned the Swisher County section when he sold it to Dillard, but he had a claim to it." It further appears by the record that appellant had Thompson make the deed to the Swisher County section to his brother, R. J. Dillard, on April 23, 1913; that subsequent thereto appellant, being indebted to A. L. Neal, had his brother deed the property to Neal as security for the money he was due Neal, and the title was in Neal at the time of the transactions hereinafter recited. The evidence would show that appellant took up the question of sale of the land with Jas. R. DeLay, Jasper N. Haney, and Fred C. Pearce. The correspondence with DeLay was carried on in appellant's own name, while the correspondence with Haney was carried on in the name of H. W. Stone, and the evidence would authorize the jury to find that the letters signed "H. W. Stone" were in fact written by appellant. One witness testifies he met appellant in Amarillo, where he had registered at a hotel in the name of Stone, and he there had a talk with him about this transaction. Thompson identifies the signature to the Stone letters as being in the handwriting of appellant; the correspondence shows that communications would be mailed to Dillard (appellant) by DeLay, and Stone would write Haney that he had received the communication from DeLay. It appears that appellant finally priced the land to DeLay at $8 per acre; that DeLay contracted to sell the land at $10 per acre, and to make the two dollars an acre he was having the deed from Neal made to him, DeLay. In passing on the title it appears there was an outstanding title of record in one Joshua H. Truet to the section of land in question, the deed from Arnold and Barrett to Truet being recorded in volume 5, page 435, of the deed records of Swisher County. The person to whom DeLay was selling the land demanded a quit claim deed from Joshua H. Truet before he would accept the title. Appellant, by letter of date October 13, 1913, writes DeLay: "Now as to quit claim deed, that has been tried and can't be had at any price, for the party is 85 years old and contends for all the land. Nothing doing along this line, unless quit

claim can be had from another Joshua H. Truitt, Sr., as per similar case to section down near Hale Center several years ago, which you probably recall. There are a number of Truitts in the world and they will make quit claim deeds for nominal sums. Do you get the idea? We don't want to be driven to this extremity if there is any other earthly show to close the deal." Later, appellant writes to DeLay a letter dated November 6, 1913: "If nothing else will carry the deal through and you will advance me $50 to make a trip to East Texas, I will get it. Neal refuses to bear the expense of the quit claim. Hence it compels me to bear the expense of the quit claim, and the expense of securing it, which I will."

Shortly after this last letter a quit claim deed was furnished to the section of land in question, appearing to be from Joshua H. Truit, Sr., to R. H. Thompson, reciting a consideration of $2000 cash. This deed purports to be acknowledged by Mr. Truit before W. A. McKenzie, notary public, Shelby County, Texas.

Mr. McKenzie swears that Mr. Truitt acknowledged no such deed before him. G. H. Stephens, who lives in Shelby County, Texas, swears that he is a son-in-law of Mr. Truitt; that Mr. Truitt is aged and very feeble, and has not been away from his home for more than two years; that he transacts no business, but he, Stephens, transacts all his business for him. That he is familiar with Mr. Truitt's signature and that he did not sign the deed to Thompson. Thompson swears that he obtained no such deed from Truitt, and had not paid him $2000, nor any other sum of money. However, the quit claim deed, purporting to be executed by Truitt to Thompson was placed of record in Swisher County in book 29, page 344, but the purchaser to whom DeLay had contracted to sell the land refused still to accept the title, giving as a reason that the deed from Barrett and Arnold to the section in question was made to Joshua H. *Truet,* while the purported quit claim to Thompson was signed Joshua H. *Truit,* Sr., and demanded proof of the identity of the person signing the deed to Thompson as being the same person to whom Barrett and Arnold had sold the land in 1875 and 1879. The man who was writing Jasper N. Haney under the name of H. W. Stone wrote Haney to have DeLay have the attorney of the proposed purchaser write such an instrument as he would accept and send it. DeLay says that he had the attorney prepare the affidavit in duplicate, and he sent one of them to appellant at Wichita Falls, and the other to W. A. McKenzie. McKenzie says he received the affidavit from DeLay and returned it to him, endorsing thereon that Truitt was dead; and further testified he had never taken an affidavit or acknowledgment from Mr. Truitt in his life. "H. W. Stone" writes Jasper N. Haney that he has received the affidavit from DeLay (which DeLay says he sent to Dillard (appellant) and then in a day or two writes to Haney that the affidavit has been forwarded to him in the mail and to get it and close the matter. Haney says he got the affidavit on which the forgery is based out of the mail; that it was presented to DeLay and the attorneys passing on the title; on the strength of this affidavit the

title was passed, and DeLay paid him (Haney) $3000 and executed two notes in payment for the section of land. Of this amount Haney kept $550; left $150 with DeLay to be paid to Pearce. Haney says the $550 he got was for information he gave and some conversations he had; that it was not for fees—that he held it for future adjustment. He says he sent the remainder to Neal. Neal says that Dillard brought him the check and notes and delivered them to him. It is thus seen that appellant, out of the proceeds received from the land, paid his debt to Neal. Haney got $550, Pearce $150, and DeLay was to get $2 per acre, or $1280 out of the man for whom he was buying and to whom he was to sell the land. In our opinion the evidence in the record would clearly authorize the jury to find that a conspiracy existed between appellant, Haney and DeLay to pass this title, and they and each of them knew that the man who claimed the land, Joshua H. Truitt of Shelby County, had not signed the quit claim deed, and would not do so; that he had not and would not sign the affidavit; that in fact Truitt did not do so is shown by the testimony of G. H. Stephens and W. A. McKenzie, and that the name of Joshua H. Truitt was signed to the quit claim deed and to the affidavit by some person other than Mr. Truitt; that Mr. Truitt's acknowledgment to the deed and oath to the affidavit was not taken by W. A. McKenzie, notary public, but that McKenzie's name as notary public, was signed to these instruments by some other person. That this was to be done and was done with the knowledge of appellant, Haney and DeLay, and that they and each of them were aware of the fact that Mr. Truitt, of Shelby County, the man who claimed the land, had not in fact signed the papers when they presented the affidavit to the attorney who was passing on the title for the purchaser, and with this knowledge appellant either mailed to Haney, or had mailed to him the forged affidavit, with instructions to give it to DeLay that he might present it to the attorney and get the title passed. Haney, in accordance with the instructions, did give it to DeLay, and DeLay, in Haney's presence, did present it to the attorney, who, believing it to be a genuine instrument and the act of Mr. Truitt, passed the title.

Appellant's first insistence is that the affidavit is not such an instrument upon which a charge of forgery can be based. The second count in the indictment reads:

"And the grand jurors aforesaid, upon their oaths, in said court, do further present, that J. J. Dillard, on or about the 5th day of January, A. D. 1914, in said county and State, did then and there unlawfully and wilfully, knowingly and fraudulently pass as true to Jas. R. DeLay, by and through his, J. J. Dillard's agent, Jasper N. Haney, a forged instrument in writing to the tenor following:

The State of Texas,
  County of Shelby.

Before me, the undersigned authority, on this day personally appeared Joshua H. Truitt, Sr., who being by me first duly sworn, on his oath

says: That he is the identical Joshua H. Truitt to whom S. J. Arnold for himself and at the attorney in fact for A. M. Barrett, on May 19, 1875, conveyed land certificate No. 48 issued to said Arnold and Barrett May 1, 1875, for work on channel of Angelina river, which conveyance by inadvertence is made to Joshua H. Truet and is recorded in volume 5, page 435, of Swisher County deed records; that he is the identical person whom L. T. Barrett and wife, A. M. Barrett, by special warranty deed dated May 27, 1879, and recorded in volume 5, page 435, of Swisher County deed records, conveyed all their interest in and to the lands covered by the location of said certificate No. 48, meaning all their interest in and to section No. 3, in block No. B-6, Swisher County, Texas, so acquired as above set out, was the separate property of affiant, paid for out of his separate estate, and was never used or occupied as a homestead, and that affiant continued to hold, use and manage said above described section of land till January 15, 1913, when by quit claim deed of that date recorded in book No. 29, page No. 344, Swisher County deed records, title was conveyed to R. H. Thompson for a cash consideration of Two Thousand ($2000) Dollars and executed said deed as the act and deed of said Joshua H. Truitt, when he signed said instrument as J. H. Truit, Sr., that the facts above set forth are each and every one within the knowledge of affiant true and correct.

Joshua H. Truitt, Sr.

Subscribed and sworn to before me, this 30th day of December, A. D. 1913.

(Seal)        W. A. McKenzie, Notary Public, Shelby County, Texas.

Which said instrument in writing the said J. J. Dillard then and there knew to be forged, and did then and there pass the same as true, with the intent to injure and defraud, against the peace and dignity of the State."

Our statute defining forgery as applicable to this character of offense reads: "Every person who falsely makes, forges or causes to be falsely made or forged, or in any way aids, assists, advises or encourages the false making or forging of any paper or any evidence of any right, title or claim of any character, or any instrument in writing, document, paper, memorandum in relation to or affecting lands or any interest in lands in this State, with intent to make money or other valuable thing thereby, or with intent to set up a claim or title, or aid or assist anyone else in setting up a claim or title to lands or interest in lands, shall be deemed guilty of forgery."

Appellant insists that this instrument would not convey land; that it is not such an instrument as is authorized to be placed of record, etc. While this is true, yet if Joshua H. Truitt should bring suit for the section of land in question, alleging that the quit claim deed was a forgery, and take the stand and admit he had made the affidavit in question and put it in circulation, he would be estopped in law and could not recover the land from one who had purchased the land, relying on the truthfulness of the affidavit. If true, he would swear

in the affidavit "that by quit claim deed of date January 15, 1913, title was conveyed by him to R. H. Thompson for the consideration of $2000." This would be such a "memorandum" in writing which, if true, would forever bar Mr. Truitt from recovering the land, and is such an instrument that a charge of forgery can be based thereon. In the case of Lassiter v. State, 35 Texas Crim. Rep., 540, it is held: "It is not pretended in this case that the deed or instrument in writing could have been registered. The indictment, as stated, does not purpose to set out an acknowledgment. The allegation is that appellant 'made a certain false instrument in writing, which false and forged instrument did then and there relate to and affect an interest in lands,' etc. It is not even called a deed, yet in form it was a deed, and on delivery it was competent to convey thereby the land described therein, in the absence of two subscribing witnesses, and in the absence of a certificate of acknowledgment. In our opinion, in such condition, it would afford the basis of suit for specific performance. It was such an instrument in writing as would afford the basis of a valid contract upon which a conveyance could be enforced. Under the language of the Act under which the indictment was drawn (although not entitled to go to record) it was such a conveyance or title paper as constituted it the subject of forgery. As between the parties, it conveyed the title; and although it was in an inchoate state as to registration, this would make no difference. It was as much the subject of forgery as a bail bond, which has been forged as to the sureties, for the appearance of a party to answer a criminal charge, before its approval by the sheriff, or before its forfeiture in court; the rule being that the instrument falsely made with intent to defraud is a forgery, although, if it had been genuine other steps must have been taken before the instrument would be perfected. These steps are not taken. See Com. v. Costello, 120 Mass., 358, approved in Costley v. State, 14 Texas Crim. App., 156. And it was as much the subject of forgery as a deed prepared for the transfer of land, which left the name of the transferee in blank, to be afterwards filled out. See Phillips v. State, 6 Texas Crim. App., 364. From what we have said it follows that the instrument set out in the indictment was such a deed or instrument in writing as was the subject of forgery." See also Phillips v. State, 6 Texas Crim. App., 364; Heard v. State, 9 Texas Crim. App., 1; Rogers v. State, 11 Texas Crim. App., 108.

Neither was it necessary to explain the instrument by averments other than there is contained in the instrument—it containing all averments necessary to explain it, and nothing could be added thereto by extraneous averments. It sets forth that deeds had been made by Barrett and Arnold to Joshua J. *Truet* to section No. 3, in block No. B-6, certificate No. 48, in Swisher County, Texas, in 1875 and 1879; that affiant signing his name as Joshua H. *Truit*, Sr., had conveyed the land in 1913 to R. H. Thompson for the consideration named; that affiant is the identical person to whom Barrett and Arnold conveyed the land, and is the identical person who had conveyed the land to Thompson. It is such an instrument as is in common use in this day

and time in making proof that seemingly apparent defects in the chain of title to land are in fact not defects, but that the title is regular in every respect, and as hereinbefore stated, if it was a genuine instrument and had been put in circulation by the maker, it would effectually bar his recovery of the land from one who had purchased it, relying on the truthfulness of the statement contained in the affidavit.

It is contended that the affidavit would not be more effective than a letter written. To concede that, yet a letter written containing such a statement of facts, if it had been written by Mr. Truitt, and put in circulation by him, if the purchaser relied on it in making the purchase, would bar Mr. Truitt from a recovery of the land. In the case of Cagle v. State, 44 S. W. Rep., 1097, the court, after discussing the question at length, states the rule succinctly: "It is a general rule that any writing of such form as to be the means of defrauding another may be the subject of forgery, and if the instrument on its face is such that it imports an obligation in regard to property, and will afford the basis of a civil action without resorting to extrinsic testimony, no extraneous averments are necessary." This instrument on its face would work an estoppel to Truitt's claim to the land, when shown, as is alleged, that it was passed or put in circulation. Reeseman v. State, 59 Texas Crim. Rep., 430, 128 S. W. Rep., 1126.

The only other ground upon which it is sought to quash the indictment is that as the indictment charges that appellant passed the instrument by and through his, appellant's agent, Jasper N. Haney, it should have contained an allegation that Haney did not know that the instrument was forged when he passed it—was in fact an innocent party to the transaction. Our statute provides that if one does an act by an agent, who does not know the act is illegal, he is the principal in the commission of the offense, and if we treat as surplusage the words "by and through his, J. J. Dillard's, agent, Jasper N. Haynie" and strike them from the indictment, an offense against the law would be fully set forth in the indictment. In Branch's Crim. Law, sec. 905, the rule is correctly stated to be, "If not descriptive of that which is legally essential to the validity of the indictment, unnecessary words or allegations may be rejected as surplusage," citing Rawls v. State, 48 Texas Crim. Rep., 622; Bolton v. State, 41 Texas Crim. Rep., 642; Mayo v. State, 7 Texas Crim. App., 342; Warren v. State, 17 Texas Crim. App., 207; McConnell v. State, 22 Texas Crim. App., 354; Hammons v. State, 29 Texas Crim. App., 445; Loggins v. State, 32 Texas Crim. Rep., 358; Lassiter v. State, 35 Texas Crim. Rep., 540; Jordan v. State, 37 Texas Crim. Rep., 222. And it is the rule that it is not necessary to allege the facts relied upon to show the person on trial to be a principal, although the offense may not have been committed by him. If he is a principal by reason of the part performed by him in the commission of the offense he may be convicted under an indictment charging him directly with its actual commission. Williams v. State, 42 Texas, 392; Gladden v. State, 2 Texas Crim. App., 508; Davis v. State, 3 Texas Crim. App., 91; Tuller v. State, 8 Texas Crim. App., 501; Mills v.

State, 13 Texas Crim. App., 487; Red v. State, 39 Texas Crim. Rep., 667.    Strike from the indictment the words "by and through his, J. J. Dillard's, agent, Jasper N. Haney," and the indictment charges appellant with the commission of the offense alleged, and if the facts do not constitute him a principal in the commission of the offense, of course the conviction would not be sustained.   If the facts do constitute him a principal, the words quoted were wholly unnecessary, and may and should be treated as surplusage.   We are, therefore, of the opinion the court did not err in refusing to quash the indictment.

The count in the indictment charging appellant with forging the instrument set forth all the elements of the offense, but as appellant was not convicted under that count, we deem it unnecessary to comment further thereon, or the charge submitting that issue to the jury.   The second count charged appellant with passing the forged instrument, and this is the count under which he was convicted, and which has heretofore been set forth herein, submitting to the jury the question of whether or not appellant was guilty of passing the forged instrument to which appellant objects in the following language:   "Defendant objects to said charge for the reason that it is not the law of this State and not applicable to the facts in this case in this: that it does not require the jury to find that the defendant was present when his said agent passed said instrument and does not require the jury to find that the said Jasper N. Haney was the innocent agent of the defendant without such knowledge on his part as would make him a principal in the crime and the defendant an accomplice, and the defendant suggests to the court is not authorized by the evidence for the reason that there is no evidence showing that the said Haney was the innocent agent of the defendant."

This is all the complaints of the charge in the record, and we frankly state that if all the evidence the State had to make appellant a principal in the commission of the offense was that Haney was an innocent agent in passing the forged instrument, the judgment would not be sustained, for no one reading this record would or could say that the record conclusively showed that Haney had no knowledge that the instrument was a forged instrument at the time he delivered it to DeLay to pass the title to the land.   If Haney was the mere agent of appellant and had no knowledge that the instrument was forged when passed, he (Haney) would be guilty of no offense, and appellant would be the principal in the commission of the offense.   And it is true this record presents no such case, and if the sustaining of the conviction relied on that state of facts, it could not and should not stand, but it depends upon no such state of case.   Mr. Haney testified he held $550 of the money received, "not as fees" but "for some information he gave and some conversations that occurred in the office."   The record would further authorize the jury to find that appellant in writing letters to Haney signed the name of "H. W. Stone" and the contents of such letters received by Haney would show that he (Haney) was fully cognizant of all the proceedings, and that Haney was a principal in the commission of the offense.   The record would also authorize a jury to find that DeLay

also knew of the fraudulent undertaking.  Appellant wrote him, "that the quit claim deed could not be had at any price, for the party is 85 years old, and contends for all the land.  Nothing doing along this line unless a quit claim deed can be had from another Joshua H. Truitt, Sr., as per similar case to section down near Hale Center, which you probably recall.  There are a number of Truitts in the world and they will make quit claim deeds for nominal sums.  Do you get the idea?"  A quit claim deed was procured, which the real Joshua H. Truitt did not sign, and was placed of record.  But on account of the spelling of the name "Truet" in the quit claim deed the attorney passing on the title for the prospective purchaser demanded proof of the identity of the person making the quit claim deed as the same person to whom the land had been conveyed in 1875 and 1879.  The letters of appellant to DeLay and Haney show they were fully aware of the steps being taken.  In fact, the testimony of Mr. McKenzie, the notary public, who was represented as having taken the acknowledgment and affidavit, shows that DeLay knew that Truitt had not in fact signed the affidavit, for he says when he received a copy of the affidavit he endorsed on it that Truitt was dead, and returned it to DeLay unsigned and unsworn to, yet when Haney brings him an affidavit purporting to have been made before this same McKenzie, he and Haney take the affidavit to the lawyer passing on the title, and by the affidavit get him to pass the title.  The whole record teems with evidence that would justify a finding that a conspiracy existed to which appellant, Haney and DeLay were parties to get this title passed by reason of these forged instruments.  And the question arises, if appellant was in a conspiracy with Haney and DeLay, he performing the part of securing the forged instruments, and Haney and DeLay securing the passing of them, would this, in law, constitute him a principal in the commission of the offense, or an accomplice to the commission of the offense?  If it constituted him an accomplice, then he could not be convicted under this indictment.  If his acts constituted him a principal in the acts of Haney and DeLay in the passing of the forged instruments, the conviction should be sustained.  To this question we have given much thought.  That able law writer, Mr. Wharton, says:  "If part of a crime be committed in one place and part in another, each person concerned in the commission of either part is liable as a principal.  Hence if several combine to forge a document and each executes by himself a distinct part of the forgery, and they are not together when the instrument is completed, they are, nevertheless, all guilty as principals."  (Sec. 255, Wharton's Crim. Law, 11th ed.)

In this case it is made plainly manifest that appellant's part was to procure the forged instruments, and they were procured by him or through his instrumentality; that it was the part of Haney to act as his attorney and insist that the papers procured perfected the title, and deliver it in connection with DeLay to the attorney of the prospective purchaser, and each in fact did perform his part in this transaction, and under the law as announced by Mr. Wharton appellant was properly prosecuted as a principal and not as an accomplice.  But it may

be insisted that Mr. Wharton announces the common law rule, while in this State the statute defines who are principals and who are accomplices, and this is true, and these statutes have been often before this court for construction, and a most exhaustive discussion of the question is found in the case of Smith v. State, 21 Texas Crim. App., 107, in an opinion by Presiding Judge White. In that case the facts tended to show that the appellant, M. M. Smith, who lived in Parker County, conspired with Bud Taylor and others to steal some cattle then situate in Erath County; that they procured two brothers of the appellant, Dave and Jim Smith, and Tom and Frank Saunders to go to Erath County to get the cattle and bring them to M. M. Smith in Parker County, and the four did do so. All six were jointly indicted charged with theft of the cattle, and in the case referred to M. M. Smith was alone on trial, and he was shown not to have gone to Erath County; not to have been in Erath County when the cattle were taken off the range and driven to Parker County, but he was seen in possession of the cattle in Parker County—the evidence showing that he and Bud Taylor claimed the cattle as their own, and they had procured the other four men to go to Erath County, round the cattle up and bring them to Parker County. The cattle were in fact the property of E. M. and W. A. Trammell. Although M. M. Smith was not in fact in Erath County when the cattle were stolen, yet he was held to be a principal in the transaction, and liable to prosecution as such in Erath County. The court, after stating the facts, says:

"But the question is, can a party under any circumstances be a principal offender under our statutes when he is not present at the time and place, and participating in the commission of the crime, where the party actually committing it is not an innocent but a guilty agent, by virtue of his own guilty knowledge and intent? Mr. Bishop, as a rule, says not, but holds that the relation of the instigator becomes changed from that of a principal to that of an accessory before the fact (or an accomplice), on account of the changed relationship of his agents. He says: 'But, if the agent employed incurs guilt, then the employer is simply an accessory before the fact.' (Id.) Only two authorities are cited in support of the text, and they have not been accessible.

"If correct in principle, the doctrine can not be of universal application under our code, where all persons are principals who are guilty *of acting together* in the commission of an offense. Parties may *act together,* whether they are bodily present together or not.

"We believe that the distinction drawn by us between principal offenders and accomplices as known to our code has been as clearly and accurately stated, as we are able to present it, in the cases of Cook v. State, 14 Texas Court of Appeals, 96, and Bean v. State, 17 Texas Court of Appeals, 60. In the former case it is said: 'We are of opinion that the proper distinction between these two character of offenders is this: The acts constituting an accomplice are auxiliary only, all of which may be and are performed by him anterior and as inducements to the crime about to be committed; whilst the principal offender not only

may perform some antecedent act in furtherance of the commission of the crime, but, when it is actually committed, *is doing his part of the work* assigned him in connection with the plan and furtherance of the common purpose, whether he be present where the main fact is to be accomplished or not. Where the offense is committed by the perpetration of different parts which constitute one entire whole, it is not necessary that the offenders should be in fact together at the perpetration of the offense, to render them liable as principals. In other words, an accomplice under our statute is one who has *completed his offense before the* crime is actually committed, and whose liability attaches after its commission by virtue of his previous acts in bringing it about through the agency or in connection with third parties. The principal offender acts his part individually in furtherance of and during the consummation of the crime.'

"In Bean v. State it is said: 'The dividing line between the two is the commencement of the commission of the principal offense. If the parties *acted together* in the commission of the offense, they are principals. If they agreed to commit the offense together, but did not *act together* in its commission, the one who actually committed it is the principal, while the other, who is not present at the commission, and who was not in any way aiding in its commission, as by keeping watch or by securing the safety or concealment of the principal, would be an accomplice. To constitute *a principal,* the offender must either be present where the crime is committed or he must do some act during the time when the offense is being committed which connects him with the act of commission in some of the ways named in the statute. Where the acts committed occur *prior* to the commission of the principal offense, or *subsequent* thereto, and are independent of, and disconnected with, the *actual commission* of the principal offense, and no act is done by the party during the commission of the principal offense, such a party is not a principal offender, but is an accomplice or an accessory according to the facts.'

"In Welsh's case, 3 Texas Court of Appeals, 413, where the employer ordered his servants to take all the cattle they could find, and that in the meantime he would go ahead and make arrangements to ship or sell them, he was held to be a principal offender, because he was engaged at the time of the theft in performing his part in the consummation of the conspiracy to steal and dispose of them.

"In Scales' case, 7 Texas Court of Appeals, 361, part of the conspirators were to steal the horses in question, whilst the rest were to get up provisions and an outfit to enable them all jointly to take the horses to Fort Elliott and sell them. (See statement in McKeen v. State, 7 Texas Ct. App., 631.) They were all held principal offenders because doing their separate parts and acting together in consummating the conspiracy.

"In McCampbell v. State, 9 Texas Court of Appeals, 124, it is said: 'If the facts should show an actual participancy by appellant in the original fraudulent taking, a conviction may be sustained for the

offense charged, although the appellant may not have been personally present at such taking.'

"In Cohea v. State, 9 Texas Court of Appeals, 173, it is said: 'He need not be actually present at the taking, if the act was committed ·in pursuance of a common intent and a previously formed design where the mind united and concurred with that of the actual taker.'

"As before stated, evidence in proof of a conspiracy to commit crime will generally, from the nature of the case, be circumstantial. It is not necessary to prove that the defendants come together and actually agreed in terms to have that design and pursue it by common means. If it be proved that defendants by their acts pursued the same objects, often by the same means, one performing one part and another another part of the same, so as to complete it with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object (Slough's case, 5 Fed. Rep., 680), and under our statute such acting together would make all principal offenders, whether present bodily at the place of the offense or not (Berry v. State, 4 Texas Ct. App., 492; Heard v. State, 9 Texas Crim. App., 1; Wright v. State, 18 Texas Crim. App., 358), and they are all principals and acting together as long as any portion or object of the common design remains incomplete; in other words, until the full purpose and object of the conspiracy is consummated and accomplished. Hence, 'where in larceny it was shown that the conspiracy extended as well to the dividing of the stolen goods as to the theft; what one did between the stealing and the dividing was deemed good evidence against both.' (2 Bish. Crim. Proc., 230, citing Scott v. State, 30 Ala., 503.) This doctrine is expressly recognized and adopted by us in O'Neal v. State, 14 Texas Crim. App., 582, and the same rule is announced in Allen v. State, 12 Lea, Tenn., 424.

"Now, in applying the law as above stated to the case in hand, if Jim and Dave Smith were the innocent agents of M. M. Smith, then M. M. Smith was a principal. If there was a conspiracy between all the parties to commit the theft, the part to be done by Jim and Dave being to take the property, and the part assigned to M. M. Smith being the sale after it was so taken, then all were principal offenders."

If the rule of law be there correctly stated, then the appellant would be a principal in the commission of the offense, even though Mr. Haney was the guilty agent of appellant and knew all the facts, as the evidence would indicate that he did, and if the opinion in the Smith case is a correct exposition of the law in this State, then the criticisms of the court's charge are without merit.

The Smith case, supra, has been frequently referred to by this court and approved. The case of Neiderluck v. State, 23 Texas Crim. App., 38, was a case where a servant entered into a conspiracy with others to open the door of a residence and to permit them to enter to commit the crime of theft. As there was a conspiracy shown, the persons entering the house were held guilty of burglary, and that they were all principals in the commission of the offense, the court saying:

"We have seen, however, that Levy was not induced to open the door by any trick or fraudulent device. He was not the dupe, but the willing assistant of his co-conspirators, fully cognizant of their felonious intent, if not the master and controlling spirit. There is no pretence either that Wing was duped or misled into opening the door of his house to the conspirators. The record leaves it beyond question that neither Wing nor Levy was induced by fraud to permit the entrance. Levy, at the time of the opening of the door, shared every intent and purpose of his companions in crime. . . .

"We have been considering this question upon the assumption that there was not such a breaking as would justify a conviction of Levy, he being a domestic servant. If the domestic servant is acting alone, there must be an actual breaking to render it burglarious. But does it follow that there must be such breaking when the servant is acting with others who are not servants? We have given this subject a most careful consideration, and are led to conclude that such breaking is not necessary. Mr. Russell, on this subject, says: 'The breaking may also be by conspiracy. Thus, when a servant conspired with a thief to let him into his master's house to commit a robbery, and, in consequence of such agreement, opened the door or window in the night-time, and let him in, this, according to the better opinion, was considered to be burglary in both the thief and the servant. Two men were indicted for burglary, and upon the evidence it appeared that one of them was a servant in the house where the offense was committed; that in the night-time he opened the street door, let in the other prisoner and showed him the sideboard, from whence the other prisoner took the plate; that he then opened the door and let the prisoner out, but did not go with him, but went to bed. And upon these facts being found specially, all of the judges were of opinion that both the prisoners were guilty of burglary, and they were accordingly executed.' (2 Russell, pp. 9, 10.)

"Upon a similar state of facts, Lord Hale said: 'It seems to be burglary in both, for if it be burglary in the thief, it must needs be so in the servant, because he is present and aiding the thief to commit a burglary.'"

In the case of Watson v. State, 21 Texas Crim. App., 598, it was held that Watson was a principal by reason of the fact that he had entered into a conspiracy with two others to steal some hogs, and while not present at the commission of the offense, yet he had agreed to and did prepare the pen in which the stolen hogs were to be and in fact were placed. The rule announced in these cases is approved in Montgomery v. State, 23 S. W. Rep., 693; Blain v. State, 24 Texas Crim. App., 626. And in the case of Phillips v. State, 26 Texas Crim. App., 228, it is tersely stated: "It is also a familiar general rule that when several parties conspire or combine together to commit an unlawful act, each is criminally responsible for the acts of his associates or confederates committed in furtherance or in prosecution of the common design for

which they combine." The case of Mason v. State, 31 Texas Crim. Rep., 306, is a case wherein Mason was held to be a principal in the passage of a forged check, although not personally present when the check was passed, the court saying: "Again, it is well settled that where it is proved that the persons charged by their act pursue the same object or purpose, one performing one part and another some other part of the same, so as to complete it with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object; and under our statute such acting together make all principal offenders, whether bodily present or not at the place of the offense. And they are all principal offenders when acting and together, as long as any portion of the object of the common design remains incomplete; in other words, until the full purpose and object of the conspiracy is consummated and accomplished."

The question of whether the evidence for the State would constitute appellant a principal or an accomplice is one that has given the writer no little trouble, yet if we are to follow the rule of law announced by those eminent men who have preceded us, there can be no question that the evidence in this case would constitute the appellant a principal and not an accomplice, for the facts in this case would justify a finding that a conspiracy existed between appellant and others to get this title passed by the attorney of the purchaser, and this affidavit was procured by appellant and mailed to Haney, who presented the affidavit and got the title passed, and the money was received by reason of the fact that this affidavit had been forged, presented as true, and that appellant was performing a part in the transaction from the beginning to the end. In fact, he was the man relied on to get the forged paper, and he writes "that it has been mailed,—to hurry the transaction through; get back the original affidavit and return to me."

The only other question raised is, it is claimed the evidence is insufficient to sustain the conviction. Taking the view of it we do, Haney and DeLay, as witnesses, would also be principals in the transaction, and the court should have so instructed the jury, or at least submitted that issue to the jury, and instructed that if they so found they could not convict upon their testimony unless they believed it to be true and that their testimony connected defendant with the commission of the offense; and further, they would not be authorized to convict appellant even if they so found unless there was other testimony in the case tending to connect the defendant with the commission of the offense. The court did not so instruct the jury, but there is no complaint of the charge in this respect. However, in passing on the sufficiency of the testimony we have viewed it from this standpoint and are of the opinion that the other evidence not only corroborates the testimony of Haney and DeLay, but if their evidence was wholly excluded from the record a jury would be authorized to find appellant guilty of the offense charged, taking into consideration the letters and telegrams of appel-

lant found in the record, which are proven up independent of the testimony of Haney and DeLay.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—From my understanding of this record and the law, there are such grave errors this judgment ought to be reversed. If the affirmance is adhered to I will write briefly.

### ON REHEARING.

### May 19, 1915.

HARPER, JUDGE.—At a former day of this term this case was affirmed. In the court below there were but three grounds assigned in the motion for new trial why the judgment should be set aside:

1. That the indictment charged no offense under the laws of this State, in that the instrument was not such an instrument upon which forgery could be based, and if such an instrument, the indictment did not contain the necessary explanatory averments.

2. That the court's charge was erroneous in that it permitted the jury to convict defendant of passing a forged instrument if Jasper N. Haney was his agent, without requiring the jury to find that said Haney was an innocent agent of appellant.

3. Because the evidence was insufficient to support the verdict, in this, that the evidence failed to show that Haney and appellant were connected in the transaction, and if acting for appellant that Haney was not an innocent agent.

These and these only were the questions raised in the motion for new trial in the court below, and in the bills of exception filed. These were the only questions presented in the briefs filed on the original hearing and in the able argument made on the submission of the case. Consequently, they were the only questions considered and passed on in the original opinion, and were the only questions we had in mind at the time of writing the opinion. Had the questions now sought to be raised for the first time in the motion for rehearing been raised in the motion for a new trial in the court below, or raised and discussed at the time this case was originally submitted to this court so that we could have had them in mind, some language is used in the original opinion, in referring to DeLay's connection with the transaction, perhaps should not or would not have been used. But no such questions being presented, and not having them in mind, if in the original opinion we said or used any language which would be construed to mean that the record demonstrated that DeLay was a principal, we should not have used such language, for what we intended to say and hold was, that the testimony raised the issue with that force and cogency that the jury would be authorized to so find if the question had been submitted to them. But neither in the indictment, nor in the charge, is the question of DeLay's connection with the transaction charged or submitted

to the jury. With these remarks to make it clear what we intended to say and hold in the original opinion, we will discuss the questions which are now raised for the first time in the motion for rehearing in this court, and which were not raised in the trial court, nor discussed in the briefs filed in this court.

As to the indictment, appellant now concedes that the indictment does charge forgery and passing a forged instrument as defined by articles 947 and 949 of the Penal Code, but he contends that the court in his charge did not submit these provisions of the code, but instead of doing so, submitted forgery and passing a forged instrument as defined by articles 924 and 937. If this is true, this could not affect the validity of the indictment. Under article 924 forgery is defined as the making of a false instrument, purporting to be the act of another, which if true would have created, increased, diminished or discharged or defeated any pecuniary obligation, or would have transferred or in any manner affected any property whatever. This is the general statute defining forgery, but the making of forged instruments affecting land titles became so general at one time in this State the Legislature deemed the punishment affixed to ordinary forgery insufficient and passed a special statute governing this matter, affixing a much heavier penalty, and so defining forgery as affecting lands as to include any character of instrument which would affect the title to land. The instrument upon which the forgery is based in this case is one which would, and shows on its face to be one which would, affect the title to land, and comes under articles 947 and 949 of the Code, and these are the offenses charged in the indictment, and as held in the original opinion, the indictment does charge an offense under those provisions, which, apparently, is conceded by appellant in his motion for a rehearing, his insistence now being that the court did not submit to the jury the offenses charged in the indictment, but submitted forgery and passing a forged instrument as defined by articles 924 and 937 instead of submitting these offenses as defined by articles 947 and 949. If the punishment prescribed was the same we might deem it immaterial, but for passing an ordinary forged instrument the punishment is not less than two nor more than five years, while the punishment for passing a forged instrument affecting title to land the punishment is not less than five nor more than twenty years. In this case the punishment assessed was only two years, and not within the minimum and maximum terms for passing a forged instrument affecting land titles, and, therefore, appellant has been assessed a punishment not authorized under the indictment. Had our attention been called to the fact that the punishment authorized to be assessed by the jury, and which was assessed by it, was not within the period of time as fixed by the Legislature, the case would not have been affirmed, but at that time we were only discussing the questions raised in the court below as shown by the record. As said before, this question was never raised until the motion for rehearing was filed in this court, but we deem it such an error as

Vol. 77 Crim.-2

can be raised at any time,. for the courts have no right to assess a punishment not provided by the laws of this State for the commission of any offense.

Another question raised in the motion for rehearing in this court and not raised in the trial court, is that as the indictment charged a passing on DeLay, and the evidence would show that DeLay was a principal in the commission of the offense, it could not have been passed on him as true, and therefore the evidence would not sustain the verdict. If the evidence conclusively showed that DeLay was a principal in the commission of the offense, this ground might be well taken, because one would not be guilty of passing a forged instrument if he passed it on a person who knew it was a forged instrument, they both under-standing and agreeing that it was to be passed and used as true on a third person not named in the indictment. But the record in this case does not conclusively show that DeLay was a principal in the com-mission of the offense. It raises the issue that he might have been in the conspiracy that is shown to have existed between appellant and Haney to pass the forged instrument, yet the fact such an issue was raised by the evidence would not entitle appellant to a new trial on that ground. If appellant desired to raise that issue he should have done so in the trial court, and then it would have been proper for the court to have instructed the jury, that if from the evidence they found that DeLay had entered into a conspiracy with appellant and Haney to pass this instrument on the person purchasing from DeLay, or his attorney, and that at the time he received it from Haney he knew it was forged, appellant should be acquitted; but if they found that at the time DeLay received same from Haney he did not know it was forged, appellant would be guilty, if they found the instrument was forged, and that appellant and Haney had entered into a conspiracy to pass it on him, they knowing it was forged, or if they found that Haney or DeLay did not know it was forged when Haney delivered it to DeLay, appellant would be guilty. However, this question should have been raised in the trial court by an exception to the charge of the court, when presented to counsel, and as they did not do so at that time, it could not be raised on a motion for rehearing in this court, since the amendment to article 743 of the Code of Criminal Procedure.

We have said this much in view of another trial, as it will be neces-sary to grant a rehearing and reverse and remand the cause because the punishment authorized by the court and assessed by the jury is not within the terms fixed as punishment by the Legislature for this char-acter of offense. And as the case will be reversed on this ground, we would suggest to the prosecuting attorney that he have returned a new indictment, in which it would be charged in one count a passing on DeLay, and in another count a passing on Mr. Mathis, the attorney for the prospective purchaser to whom DeLay was selling the land, so that the indictment would cover the case as made by the evidence. For if the jury should find that DeLay entered into the conspiracy to pass the instrument at the time he received it, knowing it was forged, and

with such knowledge passed it on the attorney passing on the title, appellant under the evidence in this case would be guilty as a principal in the passing of the instrument on the attorney; if DeLay was not in the conspiracy, at the time he received it, appellant would be guilty as a principal with Haney in passing it on DeLay, under the evidence now before us.

The motion for rehearing is granted, and the cause is now reversed and remanded

*Rehearing granted and reversed and remanded.*

DAVIDSON, JUDGE (dissenting).—I could not agree to the original opinion herein, but concur in the reversal on rehearing. Some of the latter opinion, however, I think is not correct. I do not purpose to write at any length.

1. I agree to the reversal on the ground stated, as to the error of the court in the charge submitting the punishment to the jury.

2. I can not agree with the conclusion that the alleged forged false affidavit is the subject of forgery. It is, in my judgment, without legal efficacy. It could not affect the title to the land mentioned, nor could it tend to make the forged quit claim deed a genuine document, nor could the affidavit, as I understand the law, be used for any legal purpose.

3. The alleged false affidavit could not be passed on DeLay so as to deceive or defraud. The facts bearing on this phase of the case are sufficiently stated in the original opinion by Judge Harper without repetition on my part.

4. I express no opinion as to whether the suggested new indictment, if one should be found, should allege the passing of the affidavit on Mathis. Mathis was the attorney who investigated the title for Baker, to whom it was sought to sell the land. It seems that the only connection that Mathis had with the transaction was to investigate the title as attorney for Baker. What his conclusion was on that matter is not made known, nor is it shown that the documents were ever passed from Mathis to Baker. They may have been given to DeLay. If the document was such a one as formed the predicate for forgery, as held by my brethren, then it must be passed for the purpose of deceiving or defrauding someone. I express no opinion as to that matter now, because the facts are too indefinite and meager to form the basis of any definite conclusion on that question.